

**ADR**     ORIGINAL

1  Aly Tamboura
   F-17843
2  San Quentin State Prison
   P.O. Box 4999
3  San Quentin, CA 94974

**Filed**

4  In Pro Per

FEB 2 6 2008

RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN JOSE

5

6              UNITED STATES DISTRICT COURT

7         FOR THE NORTHERN DISTRICT OF CALIFORNIA

8

9

10  ALY TAMBOURA,                    ) C08 NO. 01143 JF
                                     )
11          Petitioner,              ) VERIFIED PETITION FOR
                                     ) WRIT OF HABEAS CORPUS
12      vs.                          )
                                     )
13  ROBERT L. AYERS, Warden, San Quentin )
    State Prison                     )
14                                   )
                                     )
15          Respondent.              )
                                     )
16  _____/

        Petitioner, Aly Tamboura (hereinafter "Tamboura"),  files this Petition for Writ of

17  Habeas Corpus pursuant to 28 U.S.C. § 2254.  Pursuant to Local Rule 2254-3(d), Tamboura

18  is using this form which contains all the information required by the standard form supplied

19  by the clerk of this court:[1/]

20

21              **JURISDICTIONAL ALLEGATIONS**

        I.    Tamboura is being unlawfully held in custody by the California Department of

22  Corrections at San Quentin State Prison, San Quentin, California, by Robert L. Ayers, Warden

23  of the State Prison.  He is prisoner No. F17843.

24      II.   Tamboura was convicted of the following counts and charges:

25          A.    Inflicting corporal injury on a spouse.  Cal. Pen. Code § 273.5(a)

26

27  _____

28      1. Local Rule 2254-3(d) states: "Petitions shall be filed on a form supplied by the Clerk of the Court, and shall be filled in by printing or typewriting. In the alternative, the petition may be in a legible typewritten or written form which contains all of the information required by the court's form."

1            B.    Criminal threats. Cal. Pen. Code, § 422. Prior CT 208-209.[2]

2            C.    Petitioner admitted using a firearm during the commission of both

3    offenses. Cal. Pen. Code § 12022.5. Prior CT 208-209.

4       III.    Tamboura was sentenced in the Superior Court for the County of Monterey in

5    California.

6            A.    The case number was SS03233.

7            B.    Tamboura plead no contest to the charges and admitted the firearm

8    enhancements.

9            C.    On July 29, 2004 the court imposed and stayed a fourteen-year prison

10   sentence and placed Tamboura on probation for three years with various terms and conditions.

11   Prior CT 244-246.

12           D.    On December 16, 2005 the court held a contested hearing and found

13   Tamboura was in violation of probation. Current CT 28-29.

14           E.    On February 2, 2006, the trial judge sentenced Tamboura to state prison

15   for fourteen years.   Current 2 RT 321.

16           F.    Tamboura was represented at the contested probation violation hearing

17   by Tom Worthington, 215 W Alisal St., Salinas, CA 93901.

18       IV.    Tamboura's post-conviction procedural history in the courts of the State of

19            California is as follows:

20           A.    Tamboura filed an appeal to the California Court of Appeal, Sixth

21   Appellate District, No. H029922.

22           B.    On June 25, 2007 the Court of Appeal affirmed the finding Tamboura had

23   violated probation and the prison sentence imposed.

24

25

_____

26   2. The record in this case encompasses two appeals. The first appeal was after the original
     guilty plea. "Prior CT" refers to the clerk's transcript on appeal in the prior case, No.
27   H027846. "Prior RT" refers to the reporter's transcript in the first appeal. "Current CT" and
     "Current RT" refer to the transcripts in Tamboura's second appeal. The state court of appeal
28   took judicial notice of the record in the prior appeal.

C.    In summary, the grounds raised in the automatic appeal included the following:

1.    The court violated petitioner's right to notice under the due process clause when it found he had violated probation by engaging in prohibited second-party contact with the victim when the document setting forth the probation conditions violated did not allege this violation.

2.    There was insufficient evidence of petitioner's ability to pay child support during the first two months after his release from custody, and therefore insufficient evidence he willfully failed to pay child support.

3.    There was insufficient evidence to support the finding Tamboura willfully violated the probation condition requiring him to stay at least 100 yards away from his ex-wife's house.

4.    The Court violated Due Process when it promised to impose the suspended prison sentence regardless of the nature of any probation violation.

5.    Petitioner was deprived of his constitutional right to an impartial judge.

D.    On August 1, 2007 Tamboura filed a Petition for Review, No. S154941, in the California Supreme Court, raising the following grounds:

1.    Does it violate Due Process when a judge promises a defendant he will be sent to prison for any probation violation before it has heard any evidence;

2.    Did the finding Tamboura had violated probation by failing to pay child support violate Due Process when there was no substantial evidence to support a finding of willful failure to pay.

3.    Did the finding Tamboura had violated probation by going too close to his ex-wife's home violate Due Process when there was no substantial evidence to support a finding he knew he was within 100 yards of his ex-wife's house when he dropped off his son more than a block away.

4.    Did it violate Due Process when the court said it would not ignore

1    a probation violation about which Tamboura had no notice.

2        E.    On October 10, 2007 the California Supreme Court denied Tamboura's
3    Petition for Review.

4        F.    Tamboura was represented in his state court appeal by Paul Couenhoven,
5    staff attorney, Sixth District Appellate Program, 100 N. Winchester Blvd., Ste. 310, Santa
6    Clara, CA 95050.

7        V.    Tamboura has no appeal or other proceedings pending in any other court
8    regarding these convictions.  He has not previously filed any petition for habeas corpus in
9    federal court.

10        VI.   To date, Tamboura has not yet had a post-conviction evidentiary hearing.

11                            **INTRODUCTION**

12        VII.   This petition concerns a case with numerous violations of a defendant's
13    fundamental right to due process of law.  When Tamboura was placed on probation he was
14    ordered to pay child support and to stay at least 100 yards away from his ex-wife's home.  He
15    earned no income while he was incarcerated for several months after being granted probation.
16    When he was released, it took him two months to get back on his feet financially.  Initially he
17    had no vehicle to drive to work, and after he started working his first paycheck was seized by
18    the IRS.  Within ten weeks Tamboura was current with child support payments, and remained
19    current thereafter.  Despite the uncontradicted evidence Tamboura had no ability to pay child
20    support during the first two months after his release from custody, the state court found he had
21    violated that condition of probation.  Imprisoning a defendant for failing to pay money when
22    there is no substantial evidence of a willful failure to pay violates Due Process.

23        On a night when Tamboura took his children out to dinner, he drove within a block of
24    his ex-wife's house and dropped off his son, who then walked home.  The uncontested evidence
25    was that Tamboura drove to that spot only after his daughter expressed concern about her
26    younger brother walking home in the dark.  The place where Tamboura parked was one street
27    over from his ex-wife's house.  While he was within 100 yards as the crow flies, the path taken
28    by his son to walk home was more than 100 yards.  The finding Tamboura willfully violated

                                    - 4 -

1    probation violated due process since there was no evidence he knew he was within 100 yards
2    of his wife's home when he dropped off his son.

3        Before hearing any evidence in the case, the state court promised to send Tamboura to
4    prison no matter what violation was proved, serious or trivial. The court's prejudgment of the
5    case violated Tamboura's right to a probation revocation hearing before an impartial decision
6    maker. Finally, the court violated due process when it stated it could not ignore evidence that
7    Tamboura had violated a third probation condition, when that violation was never alleged before
8    the hearing was conducted.

9        These violations of Tamboura's fundamental right to Due Process require the reversal
10   of the finding he violated probation, and the prison sentence imposed as a result of that finding.

11                              **CLAIMS FOR RELIEF**

12                           **FIRST CLAIM FOR RELIEF**

13        VIII.   The finding that Tamboura willfully violated probation and the resulting sentence
14   were unlawfully obtained in violation of the Fifth and Fourteenth Amendments because there
15   was no substantial evidence to support the finding he willfully failed to pay child support when
16   he had the ability to pay.

17        The facts and law supporting this claim include, but are not limited to, the following:

18   A.    When Tamboura was place on probation on July 29, 2004 one condition of
19         probation was that he pay child support. Tamboura remained in custody until the
20         end of February, 2005. It was undisputed he was earning no income during that
21         time and had no ability to pay child support.

22   B.    When Tamboura was released from county jail he was unable to work because
23         he had no transportation. Current RT 191, 193. He did not receive a pay check
24         from work until the end of March 2005, after a friend gave him a truck which
25         enabled him to return to work. There was no evidence Tamboura had the ability
26         to pay child support during March.

27   C.    Tamboura's first paycheck was seized by the IRS. Current RT 193. While in
28         jail, Tamboura had asked the court for an early release so he could attend a

                                        - 5 -

1   meeting with the IRS, but the court had denied that request. Current CT 14-17;

2   Current RT 192. The uncontradicted evidence was that Tamboura lacked the

3   ability to make a child support payment in early April since his first paycheck

4   was not available to make a payment.

5   D.   Tamboura made a payment of $1,000 near the end of April, and another payment

6   of $320 in May. Current RT 196-197. The parties stipulated that as of May 17,

7   2005 Tamboura was current with child support payments, and remained current

8   through the rest of the year until he was arrested. Current RT 197.

9   E.   There was no evidence Tamboura had assets which he could have sold to get the

10   money to pay child support. He no longer owned a home. When he was

11   released from custody, rent was being paid by his fiancee and other roommates.

12   He had no vehicle. His proprietary interest in a business was worthless because

13   the liabilities of the business exceeded its assets and because the IRS had placed

14   a lien against the business payroll.

15   F.   The Due Process Clause of the Federal Constitution prohibits the incarceration

16   of a defendant for failing to meet a financial obligation absent proof of a willful

17   failure to pay and the ability to pay. *Bearden v. Georgia*, 461 U.S. 660 (1983).

18   G.   The state court of appeal found sufficient evidence Tamboura had willfully failed

19   to pay child support because he was employed as a scuba diving teacher, went on

20   scuba diving trips to the Sea of Cortez and Santa Barbara, took his family out to

21   dinner, threw a birthday party for his daughter, and owned 60 percent of the

22   stock in a company. Court of Appeal opinion at 11, 13.

23   H.   The uncontradicted evidence was that Tamboura's job as a scuba diving teacher

24   provided no income; it only provided the opportunity for free diving trips when

25   he worked as an instructor. 1 RT 217.

26   I.   Tamboura's scuba diving trips occurred in September and October 2005. RT

27   189.

28   J.   The dinners and the party cited by the court of appeal took place in September

- 6 -

1    2005.  Current RT 20-21, 55, 67-68, 173-174, 183-184.

2    K.    The uncontradicted evidence was that Tamboura's company stock was worthless

3          because the IRS had levied his stock in the company and the company payroll

4          and the company's liabilities exceeded its assets.  Current RT 192, 193, 199.

5    L.    The court of appeal violated due process when it unreasonably relied on a job

6          which produced no income, evidence of financial stability in September and

7          October 2005, and ownership of worthless stock to "infer that defendant had

8          funds available from which he could have brought himself into compliance for

9          March and April [2005] and did not." Opinion at 11.

10   M.    The state court's decision was based on an unreasonable determination of the

11         facts in light of the evidence presented in the state court proceeding.  28 U.S.C.

12         § 2254(d)(2).

13   N.    The state court's decision was contrary to, or involved an unreasonable

14         interpretation of, clearly established Federal law, as determined by the Supreme

15         Court of the United States.  28 U.S.C. § 2254(d)(2); see *Bearden v. Georgia*,

16         *supra*,  461 U.S. 660.

17                              **SECOND CLAIM FOR RELIEF**

18   IX.   The finding that Tamboura willfully violated probation and the resulting sentence

19   were unlawfully obtained in violation of the Fifth and Fourteenth Amendments because there

20   was no substantial evidence to support the finding he willfully violated the condition he stay

21   more than 100 yards away from his ex-wife.

22         The facts and law supporting this claim include, but are not limited to, the following:

23   A.    One of Tamboura's probation conditions was that he not go within 100 yards of

24         his ex-wife.  The lower state court found Tamboura had violated this probation

25         condition.

26   B.    The court of appeal found substantial evidence to support the finding Tamboura

27         willfully violated the stay away order because of two times Tamboura dropped

28         off his son near his ex-wife's house.  Opinion at 16.

C. A defendant has a due process right to not be incarcerated for a probation violation absent evidence of a willful violation of probation. *Beardon v. Georgia, supra,* 461 U.S. at p. 668. A finding of a willful violation must be supported by substantial evidence. *People v. Rodriguez,* 51 Cal.3d 437, 443 (1990); *People v. Zaring,* 8 Cal.App.4th 362, 378-379 (1992).) "'"Willfully implies . . . that the person knows what he is doing, intends to do what he is doing and is a free agent." [Citation.]'" *People v. Bell,* 45 Cal.App.4th 1030, 1043 (1996).

D. The finding Tamboura willfully violated the stay away order violated Due Process because there was insufficient evidence he knew he was within 100 yards of his ex-wife's house when he dropped off his son on two occasions, and acted willfully intending to disturb the peace of his ex-wife.

E. On September 14, Tamboura dropped off his son one street over from where his ex-wife lived after he had taken his family out to dinner. The trial court relied solely on the September 14 incident in finding Tamboura had violated the stay-away order. Current RT 264-265.

F. Tamboura, his teenage daughter and son and his fiancee went out to dinner on September 14, 2005. Pursuant to the custody agreement, after dinner Tamboura had to drop off his son at his mother's house. Tamboura, his son and his daughter all testified Tamboura was going to drop off Aly at the bottom of Lyric, well out of the 100-yard prohibited zone. He drove further up Lyric only because Samantha expressed concern about her younger brother walking home in the dark. Current 1 RT 23 (Samantha); 68-69 (Aly); 185 (Tamboura). Mrs. Tamboura agreed she did not want Aly walking the streets after nightfall. Current 1 RT 104. Thus, the undisputed evidence concerning Tamboura's "intents and motives . . . establish[es] that he was not volitionally guilty of any misconduct." *People v. Vickers, supra,* 8 Cal.3d at p. 461.

G. There was no substantial evidence Tamboura knew he was within 100 yards of

- 8 -

1    his ex-wife's home on September 14.   Mrs. Tamboura lived on Yamato.

2    Tamboura never drove to Yamato; he only drove up Lyric, the next street over.

3    Even if Tamboura knew his ex-wife lived on Yamato, and that Yamato was one

4    block over from Lyric, most city blocks are more than 100 yards long.   There

5    was no evidence Tamboura had ever gone to Mrs. Tamboura's house.   Even if he

6    had, he had no way of knowing the exact distance when he parked one street

7    over.   No one could see Mrs. Tamboura's house from where he parked.   Fenced-

8    in houses and a whole block separated the parked car from Mrs. Tamboura's

9    residence.   The only way to reach Mrs. Tamboura's home from the parked car

10    was to walk down Lyric, turn left at Primavera, turn left at Yamato, walk up two

11    houses and then cross the street to Mrs. Tamboura's house, a distance of more

12    than 100 yards.   Current 1 RT 143.

13    H.    The state court of appeal concluded that "both drop off points were within 100

14    yards of Mrs. Tamboura's house." (Opinion, p. 16.) In drawing this conclusion

15    the appellate court ignored the trial courts comments, as that court never

16    mentioned the September 10 drop-off when it found a violation of the stay-away

17    order. See Current 1 RT 264-265.

18    I.    The lack of reliance on the September 10 incident by the trial court was due to

19    the state of the evidence. Aly Jr. and appellant both testified that on September

20    10 Aly was dropped off at the bottom of Lyric, several blocks from Mrs.

21    Tamboura's home. Current 1 RT 44, 46-47, 59-60, 176-178. The only witness

22    who said the drop-off point on September 10 was further up the hill, at a point

23    within the 100 yard limit was Mrs. Tamboura. She claimed that when she asked

24    Aly Jr. where appellant parked on September 10, he said it was at corner of Lyric

25    and Primavera.  Current 1 RT 85-86.  However, Mrs. Tamboura admitted that

26    when Lee asked if Aly could show him where his father parked on September 10,

27    she watched them go down the hill, heading towards the bottom of Lyric.

28    Current 1 RT 99. That contradicts her assertion Aly Jr. said the drop-off was at

- 9 -

1    the corner of Lyric and Primavera. Lee testified that when he asked if Aly could

2    show him where his father parked on September 10, Mrs. Tamboura said Aly and

3    Lee would have to go without her because she didn't want to walk that far. She

4    said it was quite a ways. Current 1 RT 140-141. Aly and Lee walked down the

5    hill. Aly showed Lee the September 10 drop off point, which was at the corner

6    of Branham and Lyric, not Primavera and Lyric. Current 1 RT 133, 140.

7    J.   Given this evidence, it is not surprising the trial court never mentioned the

8         September 10 incident when it found appellant had violated they stay-away

9         order. There was insufficient evidence to support such a finding. There was no

10        substantial evidence to support the court of appeal's reliance on the September

11        10 drop-off.

12   K.   Furthermore, the court of appeal failed to consider appellant's intents and

13        motives on September 10 and 14 when he drove near Mrs. Tamboura's house,

14        a critical factor in determining whether he was "volitionally guilty of any

15        misconduct." *People v. Vickers, supra*, 8 Cal.3d at p. 461.

16   L.   It was undisputed that on September 10 and 14 Tamboura drove near his ex-

17        wife's house because of his son's needs, not because he was trying to harass

18        Mrs. Tamboura. It was undisputed that on September 10 he took Aly Jr. to get

19        some clothes, and then only after his son made repeated requests. Current 1 RT

20        55-58 [Aly Jr.'s testimony]; 80-81 [Mrs. Tamboura's testimony]; 173-178

21        [appellant's testimony].) On September 14 it was undisputed appellant drove up

22        Lyric and parked at the behest of his daughter, who did not want her younger

23        brother walking home in the dark after the family had gone out to dinner. Current

24        1 RT 23-28 [Samantha's testimony]; 68-69; 72 [Aly Jr.'s testimony]; 185-186

25        [appellant's testimony].) Samantha and Aly Jr. told him where to park. Current

26        1 RT 68-69, 185-186.

27   M.   Furthermore, Aly Jr. was not even supposed to be with his father that night. He

28        was due to go to his mother's house when he overheard his father mention going

- 10 -

1    out to dinner. He asked to go along. Current 1 RT 66-67; 183-184. By the time

2    they finished dinner, it was dark outside, causing concern about Aly, Jr. walking

3    home in the dark. Current 1 RT 20-21, 68, 184. Thus, the drive up Lyric was an

4    unexpected circumstance, not part of a plan to harass Mrs. Tamboura. The

5    surrounding circumstances concerning appellant's intents and motives do not

6    support a finding appellant *willfully* engaged in misconduct.

7    N.    It was a violation of due process to imprison Tamboura for a probation violation

8    since there was insufficient evidence he willfully violated probation. *Beardon*

9    *v. Georgia, supra*, 461 U.S. at p. 668

10    O.    The state court's decision was based on an unreasonable determination of the

11    facts in light of the evidence presented in the state court proceeding. 28 U.S.C.

12    § 2254(d)(2).

13    P.    The state court's decision was contrary to, or involved an unreasonable

14    interpretation of, clearly established Federal law, as determined by the Supreme

15    Court of the United States. 28 U.S.C. § 2254(d)(2); see *Bearden v. Georgia,*

16    *supra,* 461 U.S. 660.

17                              **THIRD CLAIM FOR RELIEF**

18    X.    The finding that Tamboura willfully violated probation and the resulting sentence

19    were unlawfully obtained in violation of the Fifth and Fourteenth Amendments because

20    Tamboura was deprived of his right to a hearing before an impartial arbiter.

21    The facts and law supporting this claim include, but are not limited to, the following:

22    A.    Under the Due Process Clause of the United States Constitution a probationer

23    is entitled to a probation revocation hearing before an impartial decision maker.

24    *Morrissey v. Brewer,* 408 U.S. 471, 489 (1972), *Gagnon v. Scarpelli,* 411 U.S.

25    778, 782 (1973) .

26    B.    "[A]n impartial decision maker is one who . . . does not prejudge the evidence

27    and who cannot say . . . how he would assess evidence he has not yet seen."

28    *Patterson v. Coughlin,* 905 F.2d 564, 570 (2d Cir. 1990). Where the court

- 11 -

1    retains the discretion to continue probation even after finding a probation

2    violation, "the . . . probationer is entitled to an opportunity to show not only that

3    he did not violate the conditions, *but also that there was a justifiable excuse*

4    *for any violation or that revocation is not the appropriate disposition.*"

5    *Black v. Romano,* 471 U.S. 606, 612 (1985), italics added.

6  C.  A judge who promises prison upon a probation violation finding, regardless of

7    the circumstances, violates the probationer's fundamental right to be tried by an

8    impartial judge. *Gonzales v. Johnson,* 994 F.Supp. 759 (N.D. Tx. 1997).

9  D.  Several times, both when petitioner originally pled, and when he appeared in

10    court on the alleged probation violation, the state court said he would go to

11    prison for any probation violation, no matter what the circumstances. These

12    statements were made prior to any hearing where the court heard evidence about

13    the nature of the alleged violations.

14  E.  The following exemplify the court's predetermination of the result before it

15    heard any evidence on which to base its decision:

16    -    "[W]hen you have a 14-year prison sentence suspended, that means, if

17        you violate probation *in any way,* that you will go to state prison for the

18        14 years." Prior 1 RT 27, italics added.

19    -    "If you come back here, you go to prison . . . for 14 years." Prior 1 RT

20        41.

21    -    "[I]f you violate probation, you are going to prison and you will not be

22        released. . . . It will be merciless." Prior 1 RT 49.

23    -    "If there's a violation of probation, he's going to prison for 14 years."

24        Current augmented RT 2.

25    -    "If there's a violation of probation, and *it doesn't matter what kind of*

26        *violation that is.*" *Id*. at 2-3, italics added.

27    -    "Either there is a violation or there isn't. If there is, he's going to prison

28        for 14 years." *Id*. at 3.

- 12 -

1    -    "There isn't any question, you violated probation. The Court made you
2         a promise; you made me a promise. I'm living up to my promise, you
3         didn't. Probation is terminated; defendant is committed to the
4         Department of Corrections for the period of 14 years." Current 2 RT
5         320-321.

6  F.   The court's promise to impose the suspended prison sentence, regardless of the
7       nature of any probation violation, before it heard any evidence, violated
8       Tamboura's due process right to a hearing before an impartial arbiter.

9  G.   The state court of appeal reached the merits of this issue but also found
10      Tamboura had defaulted the claim because he "did not raise the issue below."
11      Opinion, p. 27. It held the issue was forfeited under the California Supreme
12      Court's decision in *People v. Guerra,* 37 Cal.4th 1067 (2006). Opinion, at 27-
13      28.

14 H.   However, *Guerra* was decided one month after petitioner was sentenced. The
15      procedural bar applied by the state court of appeal is not adequate.

16 I.   A state procedural rule bars federal review only if it is adequate and independent.
17      *Ford v. Georgia*, 498 U.S. 411, 418 (1991). An inquiry into the adequacy of
18      a state procedural rule to foreclose federal review of a constitutional issue "is
19      itself a federal question." *Douglas v. Alabama*, 380 U.S. 415, 422 (1965). "To
20      be 'adequate,' the state procedural bar must be 'clear, consistently applied, and
21      well-established at the time of the petitioner's purported default.'" *Melendez*
22      *v. Pliler*, 288 F.3d 1120, 1124 (9th Cir. 2002), quoting *Calderon v. U.S. Dist.*
23      *Court*, 96 F.3d 1126, 1129 (9th Cir. 1996).

24 J.   At the time Tamboura was sentenced, the law in California was that a
25      constitutional claim of judicial bias could be raised on appeal even when it was
26      not raised below. See, e.g., *Catchpole v. Brannon,* 36 Cal.App.4th 237, 244
27      (1995); *In re Marriage of Iverson,* 11 Cal.App.4th 1495, 1504 (1992); *Pratt*
28      *v. Pratt,* 141 Cal. 247, 252 (1903).

1   K.   The state procedural bar applied in this case was not adequate since it was not
2        well-established when Tamboura was sentenced and had not been consistently
3        applied.

4   L.   The state court's decision was contrary to, or involved an unreasonable
5        interpretation of, clearly established Federal law, as determined by the Supreme
6        Court of the United States. 28 U.S.C. § 2254(d)(2); see *Morrissey v. Brewer,*
7        *supra*, 408 U.S. at 489, *Gagnon v. Scarpelli, supra*, 411 U.S. at 782.

8                           **FOURTH CLAIM FOR RELIEF**

9   XI.  The finding that Tamboura willfully violated probation and the resulting sentence
10  were unlawfully obtained in violation of the Fifth and Fourteenth Amendments because the trial
11  court relied on part on a probation violation about which Tamboura received no notice.

12       The facts and law supporting this claim include, but are not limited to, the following:

13  A.   The probation violation notice in this case Tamboura had violated probation by
14       disturbing the peace of the victim and by failing to comply with child support
15       payments. Current CT 21.

16  B.   When it violated probation, the court said, "And then the Court doesn't ignore
17       a couple of other facts in making this decision . . . The wife's comment that she
18       knew before your son showed up that he was coming is because the daughter
19       called in advance . . . And that is a second-party contact all by itself." Current
20       RT 266.

21  C.   The court was referring to a probation condition which prohibited any "contact
22       with the victim . . . including telephone, written or *second-party contacts* or via
23       computer." Prior 1 RT 39-40, italics added.

24  D.   Tamboura received no notice that he had to defend against an allegation he
25       violated this probation condition.

26  E.   In *Morrissey v. Brewer, supra,* 408 U.S. 471 the United States Supreme Court
27       held that parole revocation hearings have to comport with minimal due process
28       requirement, including *"written notice of the claimed violations* of parole."

                                    - 14 -

1    Italics added. In *Gagnon v. Scarpelli*, *supra*, 411 U.S. at p. 782, the high court

2    extended the *Morrissey* protections to probationers. In 1985 the United States

3    Supreme Court again stressed that the due process clause of the Fourteenth

4    Amendment guaranteed a probationer facing a revocation hearing "*written notice*

5    *of the claimed violations of his probation*" *Black v. Romano supra*, 471 U.S.

6    at pp. 611-612, italics added.

7  F.    The due process rights listed in *Morrissey v. Brewer, Gagnon v. Scarpelli* and

8        *Black v. Romano* were violated in this case since Tamboura received no notice

9        that he had violated probation by engaging in second-party contact with his ex-

10       wife.

11                              **PRAYER FOR RELIEF**

12    WHEREFORE, Tamboura prays that this Court:

13    1.    Issue a writ of habeas corpus to have him brought before this Court, to the end

14  that he might be discharged from his unconstitutional confinement and restraint;

15    2.    Order respondent to answer this petition by specifically admitting or denying

16  each allegation and claim made herein;

17    3.    Require respondent to bring forth the entire state court record so that this Court

18  can review those parts of the record that are relevant to this issue raised in this proceeding;

19    4.    Grant such other and further relief as may be appropriate and necessary to

20  dispose of the matter as justice may require.

21    Dated this January 3i , 2008, at San Quentin, California.

22

23

24                                        Aly Tamboura
                                          In Pro Per
25

26

27

28

- 15 -

1

## <u>VERIFICATION</u>

2        I, Aly Tamboura state as follows:

3        That I am the petitioner in this case.  My address is:

4  F-17843

5  San Quentin State Prison

6  P.O. Box 4999

7  San Quentin, CA 94974

8        I verify under penalty of perjury that all information contained in this petition is true

9  and correct.

10        Executed this _January 31, 2008_ , at San Quentin California.

11

12                                   Aly Tamboura

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1                              **PROOF OF SERVICE**

2   I declare that I am over the age of 18, not a party to this action and my
    business address is 100 N. Winchester Blvd., Suite 310, Santa Clara,
3   California 95050. On the date shown below, I served the within VERIFIED
    PETITION FOR WRIT OF HABEAS CORPUS on the following parties
4   hereinafter named by:

5
     X        Placing a true copy thereof, enclosed in a sealed envelope with
6             postage thereon fully prepaid, in the United States mail at Santa Clara,
              California, addressed as follows:
7
    Attorney General's Office
8   455 Golden Gate Avenue
    Suite 11,000
9   San Francisco, CA 94102-7004
    [Counsel for People of the State of
10  California]

11
    I declare under penalty of perjury the foregoing is true and correct. Executed
12  this February 22, 2008, at Santa Clara, California.

13

14                          _____
                            Paul Couenhoven
15

16

17

18

19

20

21

22

23

24

25

26

27

28