1   EDMUND G. BROWN JR.
    Attorney General of the State of California
2   DANE R. GILLETTE
    Chief Assistant Attorney General
3   GERALD A. ENGLER
    Senior Assistant Attorney General
4   PEGGY S. RUFFRA
    Supervising Deputy Attorney General
5   JOAN KILLEEN
    Deputy Attorney General
6   State Bar No. 111679
      455 Golden Gate Avenue, Suite 11000
7     San Francisco, CA 94102-7004
    Telephone: (415) 703-5968
8     Fax: (415) 703-1234
    Email: Joan.Killeen@doj.ca.gov
9   Attorneys for Respondent

10             IN THE UNITED STATES DISTRICT COURT

11           FOR THE NORTHERN DISTRICT OF CALIFORNIA

12                 SAN JOSE DIVISION

| | |
|---|---|
| **ALY TAMBOURA,** | C 08-1143 JF (PR) |
| Petitioner, | |
| v. | |
| **ROBERT L. AYERS, Warden,** | |
| Respondent. | |

**ANSWER TO PETITION FOR WRIT OF HABEAS CORPUS**

1  EDMUND G. BROWN JR.
   Attorney General of the State of California
2  DANE R. GILLETTE
   Chief Assistant Attorney General
3  GERALD A. ENGLER
   Senior Assistant Attorney General
4  PEGGY S. RUFFRA
   Supervising Deputy Attorney General
5  JOAN KILLEEN
   Deputy Attorney General
6  State Bar No. 111679
     455 Golden Gate Avenue, Suite 11000
7    San Francisco, CA 94102-7004
     Telephone: (415) 703-5968
8  Fax: (415) 703-1234
     Email: Joan.Killeen@doj.ca.gov
9  Attorneys for Respondent

10              IN THE UNITED STATES DISTRICT COURT

11          FOR THE NORTHERN DISTRICT OF CALIFORNIA

12                     SAN JOSE DIVISION

13

14  ALY TAMBOURA,                          C 08-1143 JF (PR)

15                           Petitioner,   **ANSWER TO PETITION FOR**
                                           **WRIT OF HABEAS CORPUS**
16       v.

17  ROBERT L. AYERS, Warden,

18                           Respondent.

19       Respondent provides this Answer to the Petition for Writ of Habeas Corpus:

20                               I

21                            CUSTODY

22       Petitioner, Aly Tamboura, is lawfully in state custody pursuant to the 2006 judgment

23  terminating probation for petitioner's conviction of infliction of corporal injury on a spouse with

24  personal use of a firearm and making terrorist threats, Cal. Penal Code §§ 273.5(a), 422, 12022.5(a),

25  for which he was sentenced to 14 years by the Monterey County Superior Court.

26                               II

27                  EXHAUSTION OF STATE REMEDIES

28       Petitioner has exhausted his state remedies with respect to the claims raised in his petition.

1   However, part of claim three, in which petitioner contends the trial judge was biased against him,

2   has been procedurally defaulted because petitioner failed to raise the claim by the proper statutory

3   procedure in the trial court.  *See Davis v. Woodford*, 384 F.3d 628, 654 (9th Cir. 2004).

4                                                    III

5                          STATEMENT OF FACTS AND PROCEDURE

6             Respondent incorporates by reference the statement of facts and procedure contained in

7   the accompanying memorandum of points and authorities in support of the answer.

8                                                    IV

9                                        DENIAL OF CLAIMS

10          Respondent denies that petitioner's federal constitutional rights were violated in any way.

11  Specifically, respondent denies that petitioner's right to due process was violated by the alleged

12  insufficiency of the evidence to support the findings he violated probation, by the court's imposition

13  of the suspended 14-year term, by the alleged bias of the trial judge, or by the alleged lack of notice

14  of the probation violations.

15                                                   V

16                       AVAILABLE TRANSCRIPTS AND RECORDS

17          Attached are relevant portions of the Clerk's Transcripts and the Reporter's Transcripts

18  of the trial, together with other relevant records, as indicated in the Index of State Court Records

19  Lodged in Support of Answer, incorporated herein by reference.

20                                                   VI

21                                        GENERAL DENIAL

22          Except as otherwise admitted, respondent denies each and every allegation of the petition

23  which, if found true, would form the basis of federal habeas relief.

24

25

26

27

28

1    WHEREFORE, respondent respectfully requests that the petition for writ of habeas corpus

2  be denied.

3        Dated:  August 28, 2008

4                    Respectfully submitted,

5                    EDMUND G. BROWN JR.
                     Attorney General of the State of California

6                    DANE R. GILLETTE
                     Chief Assistant Attorney General

7                    GERALD A. ENGLER
                     Senior Assistant Attorney General

8

9                    PEGGY S. RUFFRA
                     Supervising Deputy Attorney General

10

11                   /s/ Joan Killeen
                     JOAN KILLEEN

12                   Deputy Attorney General

13                   Attorneys for Respondent

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1   EDMUND G. BROWN JR.
    Attorney General of the State of California
2   DANE R. GILLETTE
    Chief Assistant Attorney General
3   GERALD A. ENGLER
    Senior Assistant Attorney General
4   PEGGY S. RUFFRA
    Supervising Deputy Attorney General
5   JOAN KILLEEN
    Deputy Attorney General
6   State Bar No. 111679
       455 Golden Gate Avenue, Suite 11000
7      San Francisco, CA 94102-3664
       Telephone: (415) 703-5968
8   Fax: (415) 703-1234
       Email: Joan.Killeen@doj.ca.gov
9   Attorneys for Respondent

10              IN THE UNITED STATES DISTRICT COURT

11          FOR THE NORTHERN DISTRICT OF CALIFORNIA

12                    SAN JOSE DIVISION

13
    **ALY TAMBOURA,**                          C 08-1143 JF (PR)
14
                              Petitioner,
15
            **v.**
16
    **ROBERT L. AYERS, Warden,**
17
                              Respondent.
18

19
    **MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF ANSWER TO
20             PETITION FOR WRIT OF HABEAS CORPUS**

21

22

23

24

25

26

27

28

1  EDMUND G. BROWN JR.
   Attorney General of the State of California
2  DANE R. GILLETTE
   Chief Assistant Attorney General
3  GERALD A. ENGLER
   Senior Assistant Attorney General
4  PEGGY S. RUFFRA
   Supervising Deputy Attorney General
5  JOAN KILLEEN
   Deputy Attorney General
6  State Bar No. 111679
     455 Golden Gate Avenue, Suite 11000
7    San Francisco, CA 94102-3664
     Telephone: (415) 703-5968
8    Fax: (415) 703-1234
     Email: Joan.Killeen@doj.ca.gov
9  Attorneys for Respondent

10              IN THE UNITED STATES DISTRICT COURT

11           FOR THE NORTHERN DISTRICT OF CALIFORNIA

12                      SAN JOSE DIVISION

13

14  **ALY TAMBOURA**,                          C 08-1143 JF (PR)

15                              Petitioner,    **MEMORANDUM OF POINTS
                                               AND AUTHORITIES IN
16          **v.**                             SUPPORT OF ANSWER TO
                                               PETITION FOR WRIT OF
17  **ROBERT L. AYERS, Warden,**               HABEAS CORPUS**

18                              Respondent.

19          In its Order to Show Cause, this Court identified petitioner's claims for relief as:  "(1)

20  there was not sufficient evidence to support the finding that Petitioner violated the terms of his

21  probation by willfully failing to pay child support, in violation of his right to due process; (2) there

22  was not sufficient evidence to support the finding that Petitioner violated his probation by willfully

23  failing to stay more than 100 yards away from his ex-wife, in violation of his right to due process;

24  (3) his probation violation hearing was not held before a neutral arbiter, in violation of his right to

25  due process; and (4) Petitioner did not receive notice of the violation of probation, in violation of

26  his right to due process."  5/2/08 Order to Show Cause at 2.  As shown below, the state court

27  reasonably rejected petitioner's claims.

28

1

**STATEMENT OF THE CASE**

2          By information filed on January 2, 2004, the Monterey County District Attorney charged

3 petitioner with attempted premeditated murder with personal use of a firearm, assault with a firearm

4 with personal use of a firearm, infliction of corporal injury on a spouse with personal use of a

5 firearm, terrorist threats, false imprisonment, and attempt to dissuade a witness, Cal. Penal Code §§

6 136.1(a)(2), 187/664, 236/237, 245(a)(2), 273.5(a), 422, 12022.5(a).  Exh. A [hereafter "CT"] 6-12.

7          On June 14, 2004, petitioner pleaded no contest to infliction of corporal injury on a spouse

8 with personal use of a firearm and terrorist threats with personal use of a firearm, with the condition

9 that he would receive a suspended sentence of 14 years and dismissal of the remaining charges.  CT

10 [H027846] 208-212.[1/]  On July 29, 2004, the trial court sentenced petitioner to 14 years, suspended

11 execution of the sentence, placed petitioner on probation for three years, and dismissed the

12 remaining charges.  CT [H027846] 242-248.

13          On October 11, 2005, the probation officer filed a notice of probation violation.  CT 21.

14 On December 16, 2005, the court held a hearing on the probation violation allegations, after which

15 it revoked petitioner's probation.  CT 28-29; Exh. B [hereafter "RT"] 267.  On February 2, 2006,

16 the court sentenced petitioner to 14 years.  CT 63-64; RT 320-321.

17          On June 25, 2007, the California Court of Appeal affirmed petitioner's judgment, Exh. F,

18 and on October 10, 2007, the California Supreme Court denied review.  Exh. H.

19          Petitioner filed his federal petition for writ of habeas corpus on February 26, 2008.  The

20 petition is timely.  28 U.S.C. § 2244(d)(1); *Bowen v. Roe*, 188 F.3d 1157, 1158-59 (9th Cir. 1999).

21

**STATEMENT OF FACTS**

22 **A.    The Underlying Offenses**

23          The statement of facts for the underlying offenses is taken from the Probation Officer's

24 Report in No. H027846.

25

26 ─────────────────────────

27     1.  The California Court of Appeal took judicial notice of the files in appeal No. H027846, petitioner's original case.  The probation violation appeal was under No. H029922, from which

28 judgment petitioner now seeks relief.

Mem. Of P.'s & A.'s In Supp. Of Ans. To Pet. For Writ Of Hab. Corpus - *Tamboura v. Ayers, Warden* - C 08-1143
JF(PR)

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

  On September 14, 2002, Jane Doe contacted Morgan Hill Police Department and reported that she had been the victim of a domestic assault committed by her husband, Aly Tamboura.  Doe arranged to come to the police station and speak with detectives on September 16, 2002.

  Upon arrival to the police station, Doe advised officers that she was very concerned about her safety, as her husband owned numerous firearms.  Doe advised officers that she feared for her safety, and wanted an assurance that if she disclosed the circumstances of the domestic assault that she would be protected from her husband's wrath.

. . . .

  Doe advised police that Tamboura's behavior had become increasingly erratic in the last several months.  As such, a family friend came and removed many of her husband's firearms and ammunition, in fear that he may harm himself, and that in July, 2002, Tamboura had been committed for observance pursuant to § 5150 W&I.

. . . .

  Doe reported that on September 13, 2002, she and her husband went on a scuba diving excursion in the Monterey Bay.  Doe stated  that the couple arrived at the Breakwater Pier in Monterey, and launched their boat at approximately 10:00 a.m. Tamboura told Doe that they were going to go to a "new place" he had heard about near Carmel.  Doe stated that they traveled so far out in the ocean that the shoreline was not apparently visible to her anymore.

  Tamboura then stopped the boat engine, and asked Doe when she was going to be "honest" with him.  He then presented her with a stack of papers.  Doe immediately recognized the papers as being copies of her email transactions on the Internet in which she conversed with several people about her husband and their relationship.  Doe stated that Tamboura admitted installing "spy" software which allowed him to access any email or Internet activity on the family computer.  Using the software, he had obtained copies of her Internet conversations.

  Tamboura demanded that she read the email transactions and handed the papers to Doe.  Just as Doe began to read the transactions, she saw Tamboura pull out an object from the interior of the boat, which she thought was a wooden bat, similar to an ax handle. Tamboura then repeatedly motioned towards her with the object, causing Doe to believe that he was going to strike her with the wooden object.  He then jabbed her forcefully in the ribs with the ax handle.  As she was wearing a dry suit for scuba diving, the suit absorbed much of the impact and prevented her from being seriously injured.  Doe stated that she did have a red mark on her chest following the blow and that her ribs continued to be sore to the touch.

  Doe advised police that Tamboura then reached into one of the storage compartments on the boat, and retrieved a handgun.  He placed the handgun barrel against her head and demanded that she provide him with a reason he should not kill her.  Doe stated that the firearm was a semiautomatic pistol that contained an inscription of the letters "NRA" on its side.  Doe stated that she was terrified, and feared that her husband was going to kill her.  She stated that she was in such a state of shock and terror that she could not even produce tears.

  Doe stated that over the course of the next three hours, Tamboura made her beg for her life, and struck her in the face repeatedly with an open hand.  She suffered mild bruising to her face and superficial abrasions to the inside of her mouth from the blows. Throughout her turmoil, she advised officers that Tamboura held the firearm against her person, pointed the weapon at her from a distance, or held the firearm near his person, causing her to fear that he could harm her at any moment.  Doe observed him "playing"

Mem. Of P.'s & A.'s In Supp. Of Ans. To Pet. For Writ Of Hab. Corpus - *Tamboura v. Ayers, Warden* - C 08-1143 JF(PR)

1
2

with the firearm by pulling out the ammunition magazine and putting it back in repeatedly. While he did this, Doe was able to observe that the ammunition magazine was full of bullets.

3
4
5

Doe stated that her husband then advised her that because she was the mother of his children, he would not kill her. He advised her that he was going to force her to watch as he killed himself, so that she could always remember that she was the sole reason he had taken his own life, and that when she looked in the mirror, she would be forced to recall her own culpability.

6
7
8

Tamboura then asked her to tie a weight to a rope. Upon completing her task, he tied the opposite end of the rope around his neck. He then placed the firearm to his head and advised Doe that if she tried to stop him, he would shoot her with the weapon. As he cautioned Doe, she could see that he had tears streaming down his face. She began to beg him not to kill himself and advised her husband that she was not worthy of such a feat.
. . . .

9
10
11
12

Doe reported that she was able to convince her husband not to commit suicide and the couple headed towards the dock in their boat. She then observed Tamboura place the firearm in a pocket of his dry-suit. Doe stated that as they traveled towards the dock, she saw members of the Coast Guard and contemplated crying out for help as the boat passed, but decided that her husband was extremely unstable and she did not want to place anyone else in danger. Doe stated on the way home from the dock, Tamboura advised her that he made a mistake in deciding not to kill himself. He stated, "I've gone too far. I hit you and pointed a gun at you. I've gone too far and there is no going back."

13
14
15
16
17
18

The following day, their daughter had a birthday party at their home. Doe stated that Tamboura was drinking alcohol and that he became increasingly hostile towards her as the day progressed. She was able to leave the house briefly to go to the store and pick up her child's birthday cake. While en route to the store, she called the police and advised them of her fear. She stated that Tamboura was monitoring her every move and that her trip to the grocery store was the first opportunity that she had to use the telephone outside of his presence. Doe was distraught and crying, and advised police that she would come to the station and advise them of the events of that weekend on the following Monday, as she would be unable to come to the police station on today's date.

19
20
21
22
23

Doe reported that later in the evening, Tamboura asked her to step outside of the house with him. She advised him that she did not care to step outside, as she was afraid of him. He responded by stating, "What, you think you are safe in here because of the kids? No, you're not." She then consented to go outside and speak with Tamboura. Once outside, he began to "go off" about all of the people he hated and would not hesitate to kill without a thought. He advised Doe that he made a mistake yesterday in the boat, and that the only thing protecting her from harm was the fact that she was the mother of his children. He warned Doe that if she told anyone about the events on the boat, he would kill her. He further warned her that whether he was sent to jail for three years or thirty years, upon his release, he would kill her.

24
25
26
27

CT 215-219 [H027486, Probation Officer's Report]. During the police investigation that followed, officers seized numerous weapons from petitioner's home, including multiple rifles, assault rifles, and a sub-machine gun. Petitioner denied the accusations made against him and attempted to persuade his wife to recant her report to the police. CT 219-221 [H027486].

28

Mem. Of P.'s & A.'s In Supp. Of Ans. To Pet. For Writ Of Hab. Corpus - *Tamboura v. Ayers, Warden* - C 08-1143 JF(PR)

4

1  **B.    The Probation Violations**

2          The statement of facts for the probation violations is taken from the hearing held on

3  December 16, 2005.

4          **1.    Prosecution's Case**

5          Samantha T. testified that her father (petitioner) had described how to get to her mother's

6  house. "He told me that you go up Lyric and you turn and my mom's house is about there."  RT 10.

7  Samantha told a police investigator that petitioner said her mother's house was two houses up on

8  Yamato.  RT 11.  The conversation between Samantha and petitioner occurred before the day that

9  petitioner dropped her brother off in the vicinity of her mother's house.  RT 9-10.

10          On cross-examination, Samantha said she lived with petitioner and his fiancee after

11  petitioner's release from jail in March 2005.  In July or August, Samantha's mother moved to a

12  house about a mile away.  Her brother and sister were living with her mother at the time, but they

13  regularly visited petitioner.  Samantha's mother told the children she did not want petitioner to know

14  where she lived, and asked them not to provide that information to him.  RT 14-19.

15          One night in mid-September, Samantha, her brother, petitioner, and petitioner's fiancee

16  went out to dinner.  When petitioner drove his son home, it was getting dark.  RT 20-22.  As

17  petitioner drove up Lyric, Samantha asked him to go further because she did not want her brother

18  to walk home in the dark.  RT 22-25.  Sometime after that date, petitioner told Samantha that he did

19  not know exactly where Samantha's mother lived and that he did not want to know.  He said that

20  he had to stay away from the area.  RT 30-34.  Although Samantha agreed that she had a

21  conversation with petitioner in which it was clear he knew exactly where her mother lived, she said

22  she could not recall whether that conversation occurred before or after the night when he dropped

23  her brother off after dinner.  RT 34-39.

24          Aly T., Jr. (Aly) said his mother's house could be seen in a photograph of Lyric Lane.  RT

25  43.  On September 10, 2005, petitioner dropped Aly off on Lyric near his mother's house.  She was

26  surprised to see him that day.  She asked how he got there and whether he told petitioner where she

27  lived.  Aly told her where petitioner dropped him off.  When petitioner dropped him off after dinner

28

Mem. Of P.'s & A.'s In Supp. Of Ans. To Pet. For Writ Of Hab. Corpus - *Tamboura v. Ayers, Warden* - C 08-1143
JF(PR)

a few days later, he stopped at another point on Lyric.  RT 44-48.  In the past, petitioner dropped Aly off down the hill near a school.  RT 46-47.

On cross-examination, Aly said he needed clothes when he was visiting with his father on September 10, so he asked to go to his mother's house to get them.  Petitioner initially refused because he was not allowed to go near Aly's mother's house.  Aly continued to ask petitioner to take him there.  Eventually petitioner said he would drop Aly off, but that he could not go near Aly's mother's house.  RT 54-59.  Aly directed petitioner to park down the hill so that he would be far enough away from the house.  He told petitioner that he lived up the hill, but did not give him the address.  RT 59-61, 65-66.  When Aly returned to petitioner's car, he said that his mother was angry that petitioner dropped him off.  RT 76.

On September 14, 2005, it was dark by the time petitioner dropped Aly off after dinner.  RT 65-67.  Samantha asked petitioner to drop Aly off further up the hill because it was dark.  Petitioner drove up the hill past Primavera and stopped on Lyric to drop Aly off.  RT 68-71.  Both Aly and Samantha told petitioner where to stop.  RT 72-73.

Aly told his mother that he wanted to live with petitioner.  He did not know a custody hearing had been scheduled for September 28.  RT 75.

Angela T. (previously identified as Jane Doe) recalled that Aly unexpectedly came home for his clothes on September 10.  Petitioner had the children that weekend, and she did not expect to see them until the next evening.  There was a restraining order against petitioner that prohibited him from bringing the children to her home.  She and petitioner had a regular schedule to drop off and pick up the children at petitioner's mother's house.  RT 80-83.  When Aly showed up on September 10, Angela asked what he was doing.  Aly said he needed clothes and that petitioner already knew where they lived.  Angela was upset and afraid, because she told the children when they moved that they were not to tell their father where she lived.  RT 83-84, 95.  Aly showed her where petitioner parked on September 10, and also where he parked a few days later.  RT 85-88, 97-99.  Angela told the police about petitioner's actions on September 20, 2005.  RT 105-106.

Petitioner had not made child support payments of $1,421 in March, April, or May 2005.

Mem. Of P.'s & A.'s In Supp. Of Ans. To Pet. For Writ Of Hab. Corpus - *Tamboura v. Ayers, Warden* - C 08-1143 JF(PR)

6

1    He made a partial payment of $1,000 on May 7, 2005. Angela had not been informed that there was

2    any problem with the earlier payments. By the time of the partial payment in May, petitioner was

3    about $16,000 to $20,000 in arrears in child support payments. RT 88-90. Angela knew in

4    September that Aly wanted to live with petitioner, and that petitioner had filed a petition to change

5    custody, with a hearing date scheduled for September 28. RT 105.

6        The distance from Angela's property line to the spot where petitioner parked his car on

7    September 14 was 170 feet. The distance from Angela's property line to the spot where petitioner

8    parked on September 10 was approximately 225 feet according to a zoning computer program.[2/]

9    From that location, Angela's house could be seen through the trees. RT 118-128.

10   **2.    Defense Case**

11       Defense investigator Richard Lee measured the closest point in a straight line between

12   Lyric and Angela's house at 198 feet. RT 142. He measured the distance between the point where

13   petitioner dropped Aly off on September 14 and Angela's house at just over 322 feet. The latter

14   measurement was made based on the distance a person would have to walk on the street, rather than

15   in a straight line. RT 143-145.

16       Petitioner was sentenced on July 29, 2004. He was released from Monterey County jail

17   at the end of February 2005. He knew that he had to stay at least 100 yards away from Angela's

18   residence. RT 151-152. He had not initiated any contact with Angela since his release from jail.

19   RT 155.

20       Petitioner first saw his two younger children about two weeks after his release from jail.

21   He had been skiing when he learned the family court had declined to modify the child custody order,

22   as Angela had requested. RT 158-161. At some point during the summer, Angela moved to a

23   residence in petitioner's neighborhood that was close to the high school their son attended.

24   Petitioner knew the area well because he had grown up there. RT 164-168. Petitioner knew that

25   Angela did not want him to know where she was living. RT 168. However, a family friend told him

26

27       2.  Aly told a defense investigator that petitioner dropped him off much further away on
     September 10. RT 128-129.

28

Mem. Of P.'s & A.'s In Supp. Of Ans. To Pet. For Writ Of Hab. Corpus - *Tamboura v. Ayers, Warden* - C 08-1143
JF(PR)

1  that Angela was living in the neighborhood around Lyric. RT 172-173.

2        On September 10, petitioner's son arrived for a weekend visit but did not bring his

3  clothing. Petitioner initially refused his son's requests to go to Angela's house to pick up clothes

4  because he did not want to violate the protective order. RT 173-174. Eventually he gave in and said

5  he would drop his son off, but he told Aly he had to stay a long way from the house. He parked on

6  Lyric at the bottom of a steep hill. Aly said his mother lived up the hill and to the right, but he did

7  not give a street address. RT 176-177.

8        On September 14, petitioner took Aly, Samantha, and his girlfriend, Jennifer Thomas, out

9  to dinner. When they were finished, it was dark. Petitioner had planned to drop Aly off at the

10 bottom of Lyric, so he could walk home to his mother's house. Samantha asked petitioner to drive

11 up Lyric, so Aly would not have to walk so far in the dark. She told petitioner where to stop, which

12 was near the corner of Lyric and Primavera. At the time, petitioner did not know the street or

13 address where Angela lived. RT 184-187.[3] He did not know that he was within 100 yards of her

14 house when he drove up Lyric. RT 187-188, 214, 220-221.[4]

15       Petitioner was not able to work after his release from custody because he did not have a

16 vehicle until the end of March. His first paycheck was taken by the Internal Revenue Service for

17 taxes owed. RT 191-193. Petitioner checked with his attorney several times about making child

18 support payments, but he did not have a schedule and did not know where to make the payments.

19 RT 193-195. Petitioner did not make a child support payment in March. He made his first payment

20 of $1,000 in April, which Angela received on May 7. He made a second payment in May of $320.

21 RT 195-197.

22

23

_____

24       3. On cross-examination, petitioner said that when he and Samantha discussed directions

25 to Angela's house, it was after September 14, and they were joking around. Petitioner denied that
   he told Samantha he blamed her because he was in trouble for violating the protective order. RT

26 207-209.

27       4. On cross-examination, petitioner said he drove past or up Lyric on a daily basis when
   driving home from work. RT 213.

28

Mem. Of P.'s & A.'s In Supp. Of Ans. To Pet. For Writ Of Hab. Corpus - *Tamboura v. Ayers, Warden* - C 08-1143
JF(PR)

8

1

**STANDARD FOR GRANTING RELIEF**

2          The Court reviews the state court's rulings under a "highly deferential" standard imposed

3   by the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA). *Woodford v. Visciotti*, 537

4   U.S. 19, 24 (2002) (per curiam).  The federal court has no authority to grant habeas relief unless the

5   state court's ruling was "contrary to, or involved an unreasonable application of," clearly established

6   Supreme Court precedent.  28 U.S.C. § 2254(d)(1).  A decision constitutes an "unreasonable

7   application" of Supreme Court law if the state court's application of law to the facts is "objectively

8   unreasonable." *Williams v. Taylor*, 529 U.S. 362, 413 (2000).  A state court's ruling based on a

9   factual determination also must be "'objectively unreasonable' in light of the record" to warrant

10  habeas relief.  *Miller-El v. Cockrell*, 537 U.S. 322, 348 (2003); 28 U.S.C. § 2254(d)(2).  The

11  petitioner bears the burden of showing that the state court's decision was unreasonable. *Visciotti*,

12  537 U.S. at 25.  Even if a constitutional error occurred, habeas relief is available only if the error had

13  a "substantial and injurious effect or influence in determining the jury's verdict." *Fry v. Pliler*, ___

14  U.S. ___, 127 S.Ct. 2321, 2325, 2328 (2007), internal quotation marks omitted; *see Brecht v.*

15  *Abrahamson*, 507 U.S. 619, 637 (1993).

16                                    **ARGUMENT**

17                                          **I.**

18  **THE STATE COURT REASONABLY REJECTED PETITIONER'S**
    **CLAIM THAT INSUFFICIENT EVIDENCE SUPPORTED THE**
19  **FINDING THAT HE VIOLATED PROBATION BY WILLFULLY**
    **FAILING TO PAY CHILD SUPPORT**
20

21          Petitioner contends that insufficient evidence supported the trial court's finding that he

22  violated the terms of his probation by willfully failing to pay child support.  The state court

23  reasonably rejected his claim.

24  **A.    State Court Of Appeal Decision**

25          Defendant contends that there was insufficient evidence that he had willfully failed
    to pay child support during the first two months after his release (March and April)
26  because there was no evidence that he had the ability to pay.  Defendant asserts that when
    a probation condition requires payment of monies, willfulness requires proof the
27  probationer had the ability to pay when he failed to make required payments.  Since the
    prosecutor introduced no evidence that defendant had the ability to pay child support
28

Mem. Of P.'s & A.'s In Supp. Of Ans. To Pet. For Writ Of Hab. Corpus - *Tamboura v. Ayers, Warden* - C 08-1143
JF(PR)

9

1   during March and April, the finding must be reversed.

2       A trial court may revoke probation if it has reason to believe that the probationer has
    violated any of the terms and conditions of probation. (§ 1203.2.)  The court has broad
3   discretion in determining whether a probationer has violated probation and a revocation
    order will not be set aside if it is supported by substantial evidence unless there is a strong
4   showing of an abuse of discretion. (*People v. Rodriguez* (1990) 51 Cal.3d 437, 443.)
    Facts supporting revocation of probation may be proved by a preponderance of the
5   evidence. (*Id.* at p. 447.)  However, a violation of a probation condition will support the
    revocation of probation only if the violation is willful. (*People v. Zaring* (1992) 8
6   Cal.App.4th 362, 378-379.)  If the allegation is that the probationer failed to comply with
    an order to pay, there must be proof the probationer willfully failed to pay and had the
7   ability to pay before probation can be revoked. (*People v. Whisenand* (1995) 37
    Cal.App.4th 1383, 1393-1394.)  "[T]he trial court must make apparent on the record, prior
8   to exercising its discretion, that it has considered and weighed relevant factors in making
    the determinations required by the statute." (*People v. Self* (1991) 233 Cal.App.3d 414,
9   418.)

10      The record showed that at the time defendant was released from jail and until
    November 2005, he was a partner owning 60 percent of the stock in Sub Dynamics, Inc., a
11  company which owned expensive equipment and other assets which it used to generate
    income from which it paid its employees, including defendant.  Until November 2005,
12  defendant remained president and part owner of Sub Dynamics and received paychecks
    from the partnership.  Defendant's first post-incarceration paycheck was seized by the IRS
13  but later paychecks were not seized.  Defendant was living rent free in a house with his
    fiancee, oldest daughter, and roommates.  He either owned or had the use of a truck
14  bought for him by a friend which he used for work.  He also worked as a scuba diving
    teacher and went on at least one boating trip to the Sea of Cortez off of Mexico.  It is not
15  clear from the record if he made the second trip to Santa Barbara.  Finally, defendant took
    his fiancee, oldest daughter, and son out to dinner at the Outback restaurant and he gave
16  a birthday party for his youngest daughter and a number of her friends and relatives.  It
    is reasonable to infer that defendant had funds available from which he could have
17  brought himself into compliance for March and April and did not.[5]

18      The trial court was much struck by defendant's attitude.  In ruling, the court stated,
    "you sit and listen and you ask yourself whether or not knowing what the obligation is and
19  knowing what I told the defendant his responsibility would be in that regard, and that is
    to support his children because that is the very first thing that is pulled, it's the first string
20  that's pulled, it's the first rub that can be made.  It's like sandpaper over a wound in the
    domestic violence relationship.  If you want control, you've got it.  Support is the force
21  that you can use to manipulate.

22      "So I look carefully at what the law requires, which is for you to make every effort
    to support and to do everything you can to support.  It is not something that is an
23  _____

24      5. In argument to the court before it ruled on the revocation petition, defense counsel stated
    that on May 17 a motion had been made in family court for a modification of the support order based
25  on the de facto change in custody caused by Samantha's return to defendant's home and actual
    custody from the day he got out of jail.  Under the terms of the modified order, net support was owed
26  to defendant.  The support Mrs. Tamboura owed defendant for Samantha was applied to the
    arrearages and was made retroactive to May 17, thus bringing defendant into compliance with the
27  probation order.

28
    Mem. Of P.'s & A.'s In Supp. Of Ans. To Pet. For Writ Of Hab. Corpus - *Tamboura v. Ayers, Warden* - C 08-1143
    JF(PR)

                                    10

1  obligation that you are to do if it's convenient to you.  It is your life dedicated to support.

2      "Now when you start there and then on March 15th you're being called by an
3  attorney to get your, as you put it, ass back for this thing, interrupting your ski trip in
   Tahoe, that tells me that … dedication and commitment to supporting your family is
4  maybe not on the top of your list.  [¶] … [¶]  Not only that, but you drove all the way back
   from Tahoe.  So we know you've got mobility.  You can get yourself to Tahoe.  You
5  ought to be able to get yourself to work.  Those are the kinds of things that I'm looking
   at.  [¶] … [¶]  The truck, the trips, San[ta] Barbara, [Sea of] Cortez.  You want to have
6  fun.  Maybe at someone else's expense, I don't know."
          . . . .
7      . . . There was substantial evidence, as stated above, that defendant held a position
   of importance in a partnership with substantial assets which was paying him on an
8  ongoing basis until he gave up his interest in the company in November 2005.
   Furthermore, defendant was supported by friends and relatives who supplied him with
9  housing, child care, and transportation when he was ready to resume work.  Thus
   defendant had options available to him to arrange short term financing if needed to fulfill
10 his child support obligation.  The court could rationally have inferred that defendant chose
   to use money available to him for recreational activities rather than for child support.

11     The court's inferences are supported by substantial evidence in the record.  There
   was no abuse of discretion.

12 Exh. F at 10-14, footnote in original.

13 **B.    The State Court's Rejection Of Petitioner's Claim Was Reasonable**

14     A federal habeas court reviewing collaterally a state court conviction does not determine

15 whether it is satisfied that the evidence met the requisite burden of proof.  *Payne v. Borg*, 982 F2d

16 335, 338 (9th Cir. 1992).  Rather, the court must ask whether the operative state court decision

17 reflected an unreasonable application of the requisite standard to the facts of the case.  *Juan H. v.*

18 *Allen*, 408 F.3d 1262, 1275 (9th Cir. 2005).  After AEDPA, the court reviews a claim of insufficient

19 evidence with an additional layer of deference.  *Id*. at 1274.  That is, the state court's application of

20 the requisite standard must be "'objectively unreasonable.'"  *Id*. at 1275 n.13, quoting *Williams v.*

21 *Taylor*, 529 U.S. 362, 409 (2000).  The court evaluating the evidence should take into consideration

22 all of the evidence presented at the proceeding.  *LaMere v. Slaughter*, 458 F.3d 878, 882 (9th Cir.

23 2006).  If confronted by a record that supports conflicting inferences, a federal habeas court "must

24 presume—even if it does not affirmatively appear on the record—that the trier of fact resolved any

25 such conflicts in favor of the prosecution, and must defer to that resolution."  *Jackson v. Virginia*,

26 443 U.S. 307, 326 (1979).

27     The California Supreme Court has determined that facts supporting revocation of

28

Mem. Of P.'s & A.'s In Supp. Of Ans. To Pet. For Writ Of Hab. Corpus - *Tamboura v. Ayers, Warden* - C 08-1143
JF(PR)

11

probation must be proved by a preponderance of the evidence. *People v. Rodriguez*, 51 Cal.3d 437, 447 (1990). Trial courts have broad discretion in determining whether a probation violation has occurred. *Id*. at 443. A court's order revoking probation will not be set aside absent a strong showing of an abuse of that discretion. *Id*. Similarly, under federal law, the "standard of proof required is that evidence and facts be such as reasonably to satisfy the judge that the probationer's conduct has not been as required by the conditions of probation." *United States v. Guadarrama*, 742 F.2d 487, 489 (9th Cir. 1984); *see United States v. Francischine*, 512 F.2d 827, 829 (9th Cir. 1975). "Evidence that would establish guilt beyond a reasonable doubt is not required to support an order revoking probation." *United States v. Francischine*, 512 F.2d at 829; *see United States v. Guadarrama*, 742 F.2d at 489. District courts have broad discretion in revoking probation. *United States v. Guadarrama*, 742 F.2d at 489; *United States v. Francischine*, 512 F.2d at 829.

Here, the record shows the state court reasonably rejected petitioner's claim that insufficient evidence supported his revocation of probation. As the trial court found, petitioner had the means to meet his child support obligation, but he willfully failed to do so. In particular, the court noted that petitioner was on a skiing trip after his release from prison and that he only returned to his home after learning he could see his children. In the court's view, if petitioner had the means and mobility to go on a ski trip, he should be able to work to support his family. The court rejected petitioner's contention that he did not have the means to support his children, noting that petitioner had financial and material support from family and friends, that he had access to a vehicle to get to work, and that he was being paid by a company in which he owned a substantial interest. Petitioner's claim that the company was worthless is not supported by the record. Moreover, he was able to make his child support payments beginning in May 2005 from his salary from that same company. The state court thus reasonably rejected petitioner's claim that there was insufficient evidence to support revocation of his probation under a preponderance of the evidence standard. Accordingly, petitioner's claim should be rejected.

Mem. Of P.'s & A.'s In Supp. Of Ans. To Pet. For Writ Of Hab. Corpus - *Tamboura v. Ayers, Warden* - C 08-1143 JF(PR)

12

## II.

### THE STATE COURT REASONABLY REJECTED PETITIONER'S CLAIM THAT INSUFFICIENT EVIDENCE SUPPORTED THE FINDING THAT HE WILLFULLY VIOLATED THE STAY-AWAY ORDER

Petitioner contends that insufficient evidence supported the trial court's finding that he violated the terms of his probation by willfully coming within 100 yards of Angela's residence. The state court reasonably rejected his claim.

### A.    State Court Of Appeal Decision

Defendant asserts there was insufficient evidence to prove that defendant knew he was within 100 yards of his ex-wife's home when he parked on another street late at night and more than a block away from where she lived. Defendant claims there was no rational connection between the prior incident mentioned by the judge (the GPS tracking of Mrs. Tamboura's car to the Morgan Hill police station) which happened more than three years before the probation violation hearing and the issue whether defendant knew exactly where Mrs. Tamboura lived in September 2005.

In September 2005, Mrs. Tamboura was no longer driving a company car. There had been no further incidents between October 2002 when defendant was first arrested and 2005, although defendant was out of custody during most of that time. Defendant claims the evidence supported his insistence that he wanted to put it all behind him and had no interest in knowing where his ex-wife lived, and the testimony of the children at the hearing supported his claim that he did not know where Mrs. Tamboura lived.

Defendant claims the evidence does not show willfulness, i.e., """that the person knows what he is doing, intends to do what he is doing, and is a free agent.""" (*People v. Bell* (1996) 45 Cal.App.4th 1030, 1043.)

In stating its ruling, the trial court moved from child support to the protective order. "The support issue here, though, really isn't the significant issue. I would start where [the prosecutor] left off.

"What is going on in your mind on the 14th is anybody's guess, sir. . . . But knowing everything about the underlying facts of your conviction, you're intelligent, resourceful and—well, you have a very difficult time emotionally dealing appropriately with your difficulties. . . .

"On the 14th, your daughter supposedly according to your testimony is so concerned about your son getting raped that she wants you to drive closer. And yet, doesn't say stop when you're closer. She says stop when you're further away. You drive up believing you're getting closer, and you don't want to get closer so you drive, you want to double the distance. . . . To get further away so that your son could walk down the hill in the dark and be raped. Your daughter is not going to give up her concern, if I believe what you said at the bottom of the hill was true, at the top of the hill. She's going to have that same concern.

"So what is it that you are saying? Why is this impossibly conflicted story being

Mem. Of P.'s & A.'s In Supp. Of Ans. To Pet. For Writ Of Hab. Corpus - *Tamboura v. Ayers, Warden* - C 08-1143 JF(PR)

13

1  presented?

2  "And then I go back to your ability to locate her at the police station with GPS. I
   know that you are resourceful. I know that. There isn't any doubt when you set your
3  mind to it you are going to find out exactly where she is. When she's calling you from
   the police station, you have that ability.

4
   "There's no doubt that you knew where she lived. . . . And there is no doubt that
5  when you went up that hill and you dropped that child off that you knew where you were
   in relationship to it. You see, if at the bottom of the hill you're [*sic*] intention was not to
6  get closer, you would have said get out, you can walk from here. Instead, you drove
   closer and then the story goes that you passed where you want us to believe you . . . just
7  drove past that so you can [*sic*] get further away. . . .

8  "You road [*sic*] a bike down that street when it was unpaved. You drove by each
   street sign. Yet, you say today is the first day you knew what the name of the street was.
9  [¶] . . . [¶]

10 "Well, that may be. It's not a technical violation. It's as the bird flies. It's not—if
   we build a fence around a house and the one side of the fence was two feet away from the
11 house but you had to travel 150 yards in order to get to the gate to let you in, the fact that
   you're at the backside doesn't mean that you're not violating it when you're two feet away
12 from the house . . . . [¶] . . . [¶]

13 "One other . . . observation that should be made is . . . your testimony . . . that your
   son would typically show up every other week without clothes. And typically, every other
14 week during this entire period of time, there was another way that worked. Now two days
   . . . in a week's time, you decided that you were going to do it some other way. And that
15 would necessarily cause communication to their mother that you're getting closer and
   closer, that you're feeling like it's okay to do this when it's not.

16
   ". . . [I]t's clear to the Court that you did willfully violate probation, as alleged in the
17 petition."

18     Substantial evidence supported the trial court's conclusion. The children testified
   that defendant knew where Mrs. Tamboura's house was. Defendant's friend told him she
19 was "right down the street." Defendant stated he grew up in the area, knew it well, and
   rode his bicycle all over the area before the roads were paved and it was built up. Aly, Jr.,
20 communicated to defendant Mrs. Tamboura's anger the first time defendant dropped him
   off near her house. Knowing that, defendant repeated the action three days later. Both
21 drop-off points were within 100 yards of Mrs. Tamboura's house. There were other
   alternatives for defendant to use to get Aly, Jr., home on both occasions—defendant could
22 have called his mother to pick Aly, Jr., up, could have had Jennifer take Aly, Jr., home
   after taking defendant home, could have dropped Aly, Jr., off at the park or the school, etc.

23
       Finally, defendant's attitude in the domestic violence program and his attitude toward
24 the court orders and his past resourcefulness in tracking Mrs. Tamboura down persuaded
   the court that defendant's failure to pay child support in March and April and his two
25 violations of the stay-away order were not de minimus. The court had handled the case
   from the preliminary hearing through the change of plea, original sentencing, and the
26 probation violation proceeding. The court recalled that at preliminary hearing, it had
   found "astounding" the conduct defendant had meted out to Mrs. Tamboura. The court
27 stated it had held defendant to answer to attempted murder "because it was so clear to the
   Court that the minute you stepped foot on that ship with her, you intended to kill her."

28

Mem. Of P.'s & A.'s In Supp. Of Ans. To Pet. For Writ Of Hab. Corpus - *Tamboura v. Ayers, Warden* - C 08-1143
JF(PR)

14

1          . . . .

2          Under the totality of the circumstances, namely, the judge's knowledge of the facts
           of the underlying offenses, his concern, supported by the record, about defendant's self-
3          control and judgment when defendant's emotions were aroused, and his appreciation of
           defendant's attempts to weaken the strictures of the probation conditions by pushing the
4          boundaries little by little and terrifying Mrs. Tamboura as defendant did, justified the
           court in finding defendant in willful violation of the probation orders and needing more
5          punishment and rehabilitation than a reinstatement of probation could provide. There was
           no abuse of discretion.

6

7    Exh. F at 14-20.

8          **B.    The State Court's Rejection Of Petitioner's Claim Was Reasonable**

9          As with petitioner's previous claim, the state court reasonably rejected his contention that

10   preponderant evidence did not support revocation of probation.  Petitioner's children testified that

11   petitioner knew where their mother lived.  Petitioner's friend told him where his ex-wife lived.

12   Petitioner knew the area well, having grown up there and ridden his bicycle around the streets where

13   Mrs. Tamboura later moved.  He even testified on cross-examination that he drove past or up Lyric

14   on a daily basis when driving home from work.  Thus, the evidence shows petitioner was aware of

15   how close he came to his ex-wife's house.  In fact, he states in his  habeas petition that "[t]he place

16   where [he] parked was one street over from his ex-wife's house.  While he was within 100 yards as

17   the crow flies, the path taken by his son to walk home was more than 100 yards."  Pet. at 4.

18         Although petitioner acknowledges he was within 100 yards of Angela's house and that

19   he was aware he was violating the stay-away order, he nevertheless argues in these proceedings, as

20   he argued in the trial court, that he was not really violating the court's probation condition because

21   it required a walk longer than 100 yards to actually reach the house.  As the trial court found, his

22   argument is specious.

23         Petitioner also argues the evidence failed to show he willfully violated the stay-away

24   order. The evidence shows the contrary.  Petitioner had a regular schedule to drop off and pick up

25   his children through his mother, but, twice within one week, he deviated from that schedule and took

26   his son within 100 yards of his ex-wife's home.  Significantly, even though petitioner knew his ex-

27   wife was upset and angry after the first violation, petitioner repeated the prohibited conduct, coming

28

Mem. Of P.'s & A.'s In Supp. Of Ans. To Pet. For Writ Of Hab. Corpus - *Tamboura v. Ayers, Warden* - C 08-1143
JF(PR)

15

1   even closer to the house the second time. Petitioner persists in arguing that he did so only to protect

2   his son, yet as the state court found, petitioner had several alternative means to return his son to his

3   ex-wife's house without violating the probation condition. Moreover, petitioner's explanations of

4   his conduct were found by the trial court to be wholly lacking in credibility and rationality. As the

5   state court of appeal found, the trial court was familiar with petitioner, having handled his case from

6   its inception. The court of appeal described the circumstances of petitioner's original sentencing,

7   and his conduct after probation had been granted, which supported the trial court's credibility

8   determination. Exh. F at 17-19. The trial court's credibility findings were entitled to deference and,

9   as shown by the record, supported by substantial evidence.

10          The state court reasonably rejected petitioner's claim that there was insufficient evidence

11   to support revocation of probation under a preponderance of the evidence standard. Accordingly,

12   petitioner's claim should be rejected.

13                                              **III.**

14   **THE STATE COURT REASONABLY REJECTED PETITIONER'S
     CLAIMS THAT THE TRIAL JUDGE PREDETERMINED HIS**
15   **SENTENCE AND WAS BIASED AGAINST HIM**

16          Petitioner contends his right to due process was violated because the trial judge had

17   already determined it would impose a 14-year sentence for a violation of probation, and that the

18   judge was biased against him. The state court reasonably rejected his claims.

19   **A.   State Court Of Appeal Decision**

20          Defendant complains that the court's repeated emphasis at the original sentencing,
     at the arraignment on the violation, and at the sentencing on the violation that if there was
21   a violation defendant would go to prison for 14 years violated due process.[6/]  He also

22   _____

23       6. At sentencing the court stated several times that if defendant "violate[d] probation in any
     way, that you will go to state prison for the 14 years," and "if you violate probation, you are going
24   to prison and you will not be released. . . . It will be merciless." At the arraignment on the probation
     violation, the court stated, "[i]f there's a violation of probation, he's going to prison for 14 years …
25   and it doesn't matter what kind of violation that is." "[E]ither there is a violation or there isn't. If
     there is, he's going to prison for 14 years." At sentencing the court stated, "There isn't any question,
26   you violated probation. The Court made you a promise; you made me a promise. I'm living up to
     my promise, you didn't. Probation is terminated[;] defendant is committed to the Department of
27   Corrections for the period of 14 years."

28   Mem. Of P.'s & A.'s In Supp. Of Ans. To Pet. For Writ Of Hab. Corpus - _Tamboura v. Ayers, Warden_ - C 08-1143
     JF(PR)

                                              16

1    claims that the court's promise to impose the suspended prison sentence regardless of the
2    nature of any probation violation demonstrates the court unconstitutionally prejudged
     evidence which had not yet been presented and shows that the court also violated due
3    process by refusing to consider whether the circumstances mitigated any violation of the
     probation.

4         Specifically, the court's refusal to permit evidence of defendant's intent and motives
5    when he dropped off his son near Mrs. Tamboura's home and its disregard of the fact that
     defendant failed to pay child support for only the first two months after a 10-month
6    incarceration, and the IRS seizure of his first pay check violated his "due process right to
     'show [. . .] that there was a justifiable excuse for any violation or that revocation is not
7    the appropriate disposition.' (*Black v. Romano* [(1985)] 471 U.S. [606,] 612.)"

8         A promise to reimpose prison regardless of the circumstances of a probation
     violation violates the principle of due process. (*Gonzales v. Johnson* (N.D. Tex. 1997)
9    994 F.Supp. 759, 763-764.) "The fundamental role and responsibility of the hearing judge
     in a revocation proceeding is not to determine whether the probationer is guilty or
10   innocent of a crime, but whether a violation of the terms of probation has occurred and,
     if so, whether it would be appropriate to allow the probationer to continue to retain his
11   conditional liberty." (*Lucido v. Superior Court* (1990) 51 Cal.3d 335, 348.) "[A]n
     impartial decisionmaker is one who . . . does not prejudge the evidence and who cannot
12   say . . . how he would assess evidence he has not yet seen." (*Patterson v. Coughlin* (2nd
     Cir. 1990) 905 F.2d 564, 570.)

13        Where the court regains the discretion to continue probation even after finding a
     probation violation, "the . . . probationer is entitled to an opportunity to show not only that
14   he did not violate the conditions, but also that there was a justifiable excuse for any
     violation or that revocation is not the appropriate disposition." (*Black v. Romano, supra,*
15   471 U.S. at p. 612.) Even when sentence is imposed and suspended upon a grant of
     probation, the court retains discretion after finding a probation violation to reinstate
16   probation under the same or modified conditions unless probation was both revoked and
     terminated. (*People v. Medina* (2001) 89 Cal.App.4th 318.)

17
18        The record does not support defendant's claims. At the original sentencing hearing,
     the court made it very clear to defendant that despite the egregiousness of his conduct, he
19   was being given one last chance and reminded him repeatedly that a violation of probation
     would mean "Fourteen years."[7/]  When defendant reappeared in court a year and a half

20

---

21        7. Before imposition of the sentence, while explaining to defendant that the parties would
22   stipulate to the 14-year prison term, the court reminded defendant that "You were told back then at
     the time that we discussed the plea that . . . when you have a 14-year prison sentence suspended, that
23   means, if you violate probation in any way, that you will go to state prison for the 14 years. . . . [¶]
     I used the example of if you fail to contact your probation officer on the day, at the time required,
24   that's a violation of probation. That you would then go to prison for 14 years. Strict compliance
     with all conditions of probation. [¶] [DEFENDANT]: Yes, sir. [¶] THE COURT: Those were
25   all the parameters of the discussions."

26        The court then imposed sentence and suspended execution of the sentence on a number of
27   terms and conditions it enumerated. The court ordered no communication or contact with, or
     monitoring of Mrs. Tamboura "whether it's in her vehicle, whether you do it electronically,
28   physically, have someone else do it[.]  If there is any effort that appears to be coming from you to

Mem. Of P.'s & A.'s In Supp. Of Ans. To Pet. For Writ Of Hab. Corpus - *Tamboura v. Ayers, Warden* - C 08-1143
JF(PR)

1    later to be arraigned on a petition alleging the probation violations, defense counsel stated
     it might be helpful to have a prehearing conference on the alleged probation violations.
2    The court stated it was not sure that a conference would be productive. "If there's a
     violation of probation, he's going to prison for 14 years." When defense counsel said
3    there was no violation, the court set the matter for a hearing. The court said the case
     would not be negotiated because the court and parties had agreed that defendant would
4    receive a suspended 14-year sentence to be imposed if defendant violated probation.

5        Importantly, however, the court added, "If he gets found in violation, it will be sent
     out for supplemental report. You are welcome to present any kind of information at the
6    sentencing. I'm not interested in negotiating this."

7        The probation violation hearing was held on December 16, 2005 and covered 268
     pages of reporter's transcript. Six witnesses were heard and 18 exhibits were entered into
8    evidence. Defendant testified at length. Contrary to his claim, the court did not limit his
     testimony or prevent him from presenting mitigating evidence with respect to the conduct
9    alleged. Defendant explained his thoughts, motives, and actions not only with respect to
     the alleged probation violations, but with respect to many other matters as well. For
10   example, defendant claims the court excluded as irrelevant evidence about defendant's
     initial refusal to take Aly, Jr., to pick up some clothes and only relented because he had
11   to go that way anyway to pick up some birthday party guests. However, defendant
     testified to that evidence, and when the prosecutor questioned its relevance, defense
12   counsel responded, "Goes to the issue of the willfulness of the alleged violation." The
     court stated, "Well, so far what I understood him to testify to is he got into a car and he
13   intended to go take the son to get clothes at the mother's house. [¶] So willfulness

14   _____

15   monitor her activity, how many years do you go to prison? [¶] [DEFENDANT]: Fourteen. [¶]
     THE COURT: All right. Just so we're clear on that." The court informed defendant that his and
16   Mrs. Tamboura's flexible schedule for arranging visitation drop-offs and pick ups had to stop. "You
     need to go back to the family law court. . . . You need to have an order that sets out the times, the
17   dates, the places. It does not provide for any communication. [¶] [DEFENDANT]: There is one
     in place. [¶] THE COURT: Hang on just a second, Mr. Tamboura. I'm trying to explain this in
18   a way that you will understand. . . . There will be an order that will set out exactly what you can and
     can't do. It will not include any contact, any communication with the victim. It will be an inflexible
19   schedule. It will not have any flexibility. You understand that? [¶] [DEFENDANT]: Yes. [¶]
     THE COURT: If you can't manage that, then what happens? [¶] [DEFENDANT]: Back here. [¶]
20   THE COURT: No. No. Forget coming back here, sir. If you come back here, you go to prison.
     [¶] [DEFENDANT]: I understand. [¶] THE COURT: — for 14 years. [¶] [DEFENDANT]: I
21   understand that. [¶] THE COURT: This is serious. [¶] [DEFENDANT]: I understand.
22        "THE COURT: It's been serious all along, and now you need to understand there is no room
     for error here. I talked about that when we took the plea originally. I thought you could do it." The
23   court then explained that if any order in the family law court conflicted with this court's order, the
     family law court's order is "superseded and terminated." Defendant replied that he understood. The
24   court ordered defendant to serve 365 days in the county jail and remanded him immediately. "[T]he
     reason for that, Mr. Tamboura, is very simple. This is your last, very last chance. . . . And . . . if
25   you violate probation, you are going to prison and you will not be released. There will be no bail.
     You will come in. It will be merciless. [¶] Do you understand that? [¶] [DEFENDANT]: Yes.
26   [¶] THE COURT: Fourteen years. [¶] [DEFENDANT]: I understand. [¶] THE COURT: Good
27   luck."

28

     Mem. Of P.'s & A.'s In Supp. To Ans. To Pet. For Writ Of Hab. Corpus - *Tamboura v. Ayers, Warden* - C 08-1143
     JF(PR)

1   impacted by other children. So clarify that for me before we get into this." After counsel
2   explained defendant's anticipated testimony, the court responded that it did not think that
    evidence "reduces or impacts the issue of whether or not it was willful, the fact that he
3   also had to do something else." The court sustained the prosecutor's objection; there was
    no motion to strike and the evidence remained in the record.

4       "Relevant evidence" means evidence having any tendency in reason to prove or
    disprove any disputed fact that is of consequence to the determination of the action.
5   (Evid. Code, § 210.) The trial court correctly determined that defendant's having to pick
    up other children at their homes or give his son a ride to get clothes had no tendency in
6   reason to disprove the inference that he willfully placed himself within 100 yards of Mrs.
    Tamboura's home knowing that he was under court order to stay away.
7
8       Similarly, defendant complains that the court viewed as irrelevant his counsel's
    question to Aly, Jr., whether, when he and defendant left the restaurant after dark on
9   November [sic] 14, there was any discussion about where his father could leave him so
    he would be in a safe place to get back home. Actually, the prosecutor objected on
10  hearsay and vagueness grounds and it was the prosecutor who said, "I'm curious as to its
    relevance in view of these proceedings." The court asked defense counsel, "Relevance?"
    Counsel replied, "Maybe I can't show any. I'll ask a different question."
11
12      There was no ruling on the prosecutor's objection; defense counsel abandoned the
    question. However, the court was not deprived of the evidence. Samantha's and
13  defendant's testimony that Samantha was concerned about Aly, Jr.,'s safety and that she
    and Aly, Jr., directed defendant where to stop was in the record.
14
15      Defendant also faults the court for failing to recognize that the stay-away order issue
    did not merely concern whether there was a technical violation, but whether there were
16  circumstances which excused or mitigated the behavior. Defendant acknowledges that
    if one "flew in a straight line like a bird," the September 14 drop-off point was within 100
17  yards of Mrs. Tamboura's residence. But, defendant argues, it was not visible from that
    location, it was one street over, fenced-in houses and a whole city block separated the
18  parked car from the residence, and the only way to reach Mrs. Tamboura's home from the
    stopped car was to walk down Lyric, turn left at Primavera, turn left at Yamato, walk up
19  two houses, and then cross the street to Mrs. Tamboura's home, a distance of more than
    100 yards. Defendant concludes, "[t]he court's narrow focus on the straight-line distance
    was unfair [and] [i]ts refusal to consider the attendant circumstances violated due
20  process."

21      A court has "broad discretion in determining whether a probationer has violated
    probation." (People v. Rodriguez, supra, 51 Cal.3d at p. 443.) The court in this case was
22  clearly concerned with defendant's state of mind—whether he "could comply with the
    terms and conditions of probation, [whether] you wouldn't let the emotions and the
23  impulses control you, [whether] you would be able to control your behavior, strictly,
    because any violation of probation, as I told you then, would result in a prison
    commitment of 14 years."
24
25      As the court assessed defendant's behavior, "we aren't talking about some hidden
    obstacle here that you tripped over or ran against[;] this is not an iceberg that had some,
26  like a land mine exploded by surprise on [defendant]. . . . [Defendant] is a very bright,
    bright, man, . . . [¶] . . . [T]his isn't like you accidentally ended up . . . within 100 yards
27  of that house. You knew exactly where it was, as I said[,] and you were letting everybody
    know it." The court concluded, "you knew what was going to happen and you intended
    it to happen. [¶] . . . You knew exactly what you were doing, and that's why we're
28

Mem. Of P.'s & A.'s In Supp. Of Ans. To Pet. For Writ Of Hab. Corpus - *Tamboura v. Ayers, Warden* - C 08-1143
JF(PR)

19

1    here."

2        Defendant had ample opportunity to show why he went within 100 yards of Mrs.
     Tamboura's house. What he demonstrated to the court was not a necessity to approach
3    Mrs. Tamboura's house or mitigating reasons for approaching Mrs. Tamboura's house,
     but a willful decision to approach the house. As stated *ante*, the court had reason to worry
4    about the safety of the victim in the light of defendant's renewed misbehavior toward her.
     Defendant has not demonstrated that the court failed to consider the circumstances of the
5    violation, its severity, or mitigating circumstances. There was no showing that the court
     had a predetermination to impose a 14-year sentence.
6
         Next, defendant declares the court's promise to impose the suspended prison
7    sentence regardless of the nature of the probation violation demonstrates the court
     unconstitutionally prejudged how it would assess evidence which had not yet been
8    presented. Defendant did not raise the issue below. He relies on *Catchpole v. Brannon*
     (1995) 36 Cal.App.4th 237, 244, for authority to raise the claim on appeal because it is a
9    matter involving public interest and the due administration of justice. *Catchpole* did not,
     however, discuss the mechanism set forth in Code of Civil Procedure section 170.3 for
10   presenting claims of judicial disqualification, nor did it discuss the limitations on appellate
     review contained in the statute.
11
         In 2006, the California Supreme Court addressed the necessity of raising a claim of
12   judicial bias in a timely manner, noting that defense counsel "made no effort to comply
     with the procedures under Code of Civil Procedure section 170.3, subdivision (c)(1), and
13   seek disqualification of the judge." (*People v. Guerra* (2006) 37 Cal.4th 1067, 1110-1111
     (*Guerra*).)
14
         "'If a judge refuses or fails to disqualify [himself or] herself, a party may seek the
15   judge's disqualification. The party must do so, however, "at the earliest practicable
     opportunity after discovery of the facts constituting the ground for disqualification."
16   (Code Civ. Proc., § 170.3, subd. (c)(1).)' [Citation.] . . . [D]efense counsel was fully
     aware before and during trial of all the facts defendant now cites in support of his claim
17   of judicial bias. But he never claimed during trial that the judge should recuse himself or
     that his constitutional rights were violated because of judicial bias. 'It is too late to raise
18   the issue for the first time on appeal.' [Citations.] For the same reason, defendant has
     forfeited his additional claims that the trial judge's alleged bias affected his subsequent
19   trial rulings." (*Guerra, supra,* 37 Cal.4th at p. 1111.)

20       Like *Guerra*'s counsel, defense counsel here was fully aware of the facts defendant
     now cites in support of his claim. His failure to seek the judge's recusal or raise any claim
21   of judicial bias in the trial court forfeits his claim on appeal. At any rate, as we have
     discussed exhaustively above, the evidence in the record amply supports the trial court's
22   decision to revoke and terminate probation and order execution of the suspended sentence.

23   Exh. F at 21-28, footnotes in original.

24       **B.    The State Court's Rejection Of Petitioner's Claim Was Reasonable**

25       Petitioner raised two separate claims in the court of appeal. First, that he was deprived

26   of due process because the trial court allegedly stated it would impose a 14-year sentence for any

27   violation of probation, regardless of the nature of that violation, and that it refused to consider

28
Mem. Of P.'s & A.'s In Supp. Of Ans. To Pet. For Writ Of Hab. Corpus - *Tamboura v. Ayers, Warden* - C 08-1143
JF(PR)

20

1    mitigating evidence.  Exh. C at 44.  Second, that the trial judge was biased against him and that he

2    should be assigned a new judge on remand.  He cited California Code of Civil Procedure section

3    170.1(c) in support of his claim.  Exh. C at 56.  As to the second claim, the court of appeal found

4    that petitioner had waived the claim because he failed to follow the required statutory procedure by

5    raising the claim of bias at the first opportunity in the trial court.  The court noted that recent

6    California Supreme Court authority held that an objection under the statutory procedure in the trial

7    court was required to preserve the claim.  The court also found the claim to be without merit, as

8    explained in its rejection of petitioner's companion claim.  Exh. F at 27-28.

9            Claims that were not properly raised in the trial court are procedurally defaulted and may

10   not be considered on federal habeas corpus absent a showing of cause for the default and prejudice

11   as a result.  *Bonin v. Calderon*, 59 F.3d 815, 842-843 (9th Cir. 1995); *see Davis v. Woodford*, 384

12   F.3d 628, 654 (9th Cir. 2004) (claim was procedurally defaulted where no constitutional objection

13   was raised at trial); *Rich v. Calderon*, 187 F.3d 1064, 1070 (9th Cir. 1999) (claim was procedurally

14   defaulted where no objection to prosecutor's closing argument was made).

15           Petitioner claims the procedural bar is not adequate and independent because the supreme

16   court case upon which the court of appeal relied was decided after his initial sentence, and that the

17   rule was not well established and consistently applied before that time.  Pet. at 13-14.  Petitioner

18   misunderstands the court of appeal's decision.  The court did not rely solely on the recently decided

19   case (which, in any event, relied on prior authority).  Rather, it pointed out that the statutory

20   framework for challenging a judge's bias, which was well established at the time of petitioner's trial,

21   had not been followed.  The recent case, *People v. Guerra*, 37 Cal.4th 1067, 1110-1111 (2006),

22   confirmed the necessity of following the statutory framework in a timely manner in order to preserve

23   the claim on appeal.  The court of appeal also explained that the authority upon which petitioner

24   relied to raise his claim did not support his argument as to its timeliness.  Accordingly, petitioner's

25   contention that the procedural bar is not adequate and independent is incorrect.   Since petitioner

26   fails to show cause for his procedural default and that he was prejudiced as a result, his claim should

27   not be considered on federal habeas corpus.

28

Mem. Of P.'s & A.'s In Supp. Of Ans. To Pet. For Writ Of Hab. Corpus - *Tamboura v. Ayers, Warden* - C 08-1143
JF(PR)

1        In any event, as the court of appeal exhaustively explained as to both of petitioner's

2  claims, they were not supported by the record. The record shows that in an effort to impress upon

3  petitioner the seriousness of his situation, the court repeatedly warned him that if he violated

4  probation, he would receive a 14-year prison sentence. Plainly, the court meant that if petitioner

5  violated probation and probation was terminated, the suspended term would be imposed. The court

6  did not mean that petitioner would receive a 14-year prison term for even the most minor violation

7  of probation. On the contrary, the court stated after a lengthy probation revocation hearing that

8  petitioner had violated probation in more ways than one, but it was most concerned about his

9  conduct on September 14, 2005, when he came within 100 yards of his ex-wife's house. The court

10  considered that violation serious and willful. It stated at sentencing that the violation was not

11  technical, but indicative of petitioner's refusal to abide by the protective order. The court's

12  distinction between mere technical violations and what it considered to be serious probation

13  violations shows that it did not violate petitioner's probation and impose a 14-year prison term

14  arbitrarily, as petitioner claims. On this record, there is no doubt the court understood it had

15  discretion to revoke and terminate probation. The court of appeal reasonably found it did not abuse

16  its discretion by doing so.

17        The record also shows the court was willing to consider petitioner's evidence. It permitted

18  petitioner to explain at length the reasons for his actions, and did not limit his testimony. The court

19  also told counsel before the hearing that it would consider any evidence he had to present.

20  Accordingly, petitioner's claim that he was foreclosed from presenting a defense and explaining why

21  probation should not be revoked is not supported by the record.

22        At the initial sentencing, the court imposed a 14-year sentence but suspended its

23  execution. The court took care to ensure that petitioner understood if he violated the terms of his

24  probation, he risked imposition of that 14-year term. During the probation revocation hearing, the

25  court heard extensive evidence from both the prosecution and the defense. After hearing that

26  evidence, the court determined that petitioner had violated probation as alleged. At sentencing, after

27  considering the supplemental probation report and the parties' arguments, the court determined it

28

Mem. Of P.'s & A.'s In Supp. Of Ans. To Pet. For Writ Of Hab. Corpus - *Tamboura v. Ayers, Warden* - C 08-1143
JF(PR)

1    would terminate probation and impose the suspended 14-year term.  Nothing in the court's actions

2    showed the court inflexibly determined in advance the outcome of the hearing, nor that the judge

3    was biased against petitioner.   Because the record shows the state court reasonably rejected

4    petitioner's claim, he is not entitled to relief.

5                                                **IV.**

6    **THE STATE COURT REASONABLY REJECTED PETITIONER'S**
     **CLAIM THAT HE WAS NOT GIVEN NOTICE OF THE PROBATION**
7    **VIOLATIONS**

8              Petitioner contends the trial court violated his right to due process by finding he violated

9    probation based on conduct not alleged in the petition.  The state court reasonably rejected his claim.

10   **A.    State Court Of Appeal Decision**

11             Defendant asserts that the court found that defendant violated the probation condition
     that he not have "contact with the victim . . . including telephone, written or second-party
12   contacts or via computer."   He complains that since the petition alleging violation of
     probation did not contain an allegation that he violated that probation condition, he did
13   not receive notice that he had to defend against that charge.

14             The subject came up when the trial court was stating the finding that defendant
     willfully violated the stay-away order.  Explaining why the court believed that when
15   defendant dropped Aly, Jr., off he knew exactly which street Mrs. Tamboura lived on
     "[y]et, you say today is the first day you knew what the name of the street was. [¶] THE
16   DEFENDANT:  That's not true.  [¶]  THE COURT:  Well, that may be.  It's not a
     technical violation.  It's as the bird flies. . . .  [¶]  And then the Court doesn't ignore a
17   couple of other facts in making this decision and comments.  The wife's comment that she
     knew before your son showed up that he was coming . . . because the daughter called in
18   advance.  Not after you had to wait 15 minutes it would seem.  And that is a second-party
     contact all by itself.  [¶]  . . .  [¶]  One other . . . observation that should be made is that
19   …your son would typically show up every other week and be without clothes."

20             Contrary to defendant's assertion, the court did not make a finding of an independent
     probation violation that defendant violated the second-party contact prohibition.  The
21   context makes clear that the court was drawing inferences of knowledge of the stay-away
     prohibition and willfulness of defendant's actions from the evidence presented to support
22   a violation of the stay-away order.

23             Defendant admitted telling his daughter to call his ex-wife's house, although he
     stated it was because he had been waiting about 15 minutes for Aly, Jr., to get his clothes
24   and defendant had a lot to do to get ready for the party.  Aly, Jr., did not have his own
     phone, so defendant called Samantha to tell her to call Aly, Jr., at his mother's house and
25   hurry him up.  The court found that defendant did not make that request after he had to
     wait 15 minutes.  Defendant asked Samantha to make the phone call as he was on his way.
26   The court interpreted that as evidence that defendant knew that the call would result in
     communication with Mrs. Tamboura, which supported the finding that defendant willfully
27   violated the stay-away order.

28

Mem. Of P.'s & A.'s In Supp. Of Ans. To Pet. For Writ Of Hab. Corpus - *Tamboura v. Ayers, Warden* - C 08-1143
JF(PR)

                                                 23

1    The court's finding was clear: "you did willfully violate probation, as alleged in the
2    petition." The court did not add any findings on allegations that were not alleged in the
     petition. There was no failure to give defendant notice of the charges against which he
3    had to defend.

Exh. F at 20-21.

4

5    **B.    The State Court's Rejection Of Petitioner's Claim Was Reasonable**

6            Petitioner frames his claim as a denial of notice of the basis for revocation of probation,

7    arguing he was unaware of the charges against which he had to defend. However, as the court of

8    appeal explained, petitioner's probation was not revoked based on his apparent second-party contact

9    with his ex-wife. Rather, probation was revoked based on the two violations alleged, that he

10   willfully failed to pay child support and that he willfully violated the order that he not come within

11   100 yards of his ex-wife's home. The trial court observed that petitioner apparently had engaged

12   in prohibited second-party contact, but as the court of appeal explained, that observation supported

13   the court's finding that petitioner's conduct in coming within 100 yards of his ex-wife's home was

14   willful. Petitioner had asked his daughter to call the house to say that he and his son were on their

15   way over, and he waited in the car nearby while his son retrieved his clothing. Contrary to

16   petitioner's claim, nothing in the record supports his contention that the trial court added an

17   unnoticed probation violation when it made its findings. On the contrary, the record shows the trial

18   court found petitioner willfully violated probation as alleged in the petition, and nothing more. The

19   court did not make any additional findings beyond those relevant to the noticed violations.

20   Accordingly, the state court reasonably rejected petitioner's claim that he was denied notice of the

21   probation violations supporting the court's termination of probation.

22

23

24

25

26

27

28

Mem. Of P.'s & A.'s In Supp. Of Ans. To Pet. For Writ Of Hab. Corpus - *Tamboura v. Ayers, Warden* - C 08-1143
JF(PR)

24

1

**CONCLUSION**

2

3

       For the reasons stated, respondent respectfully requests that the petition for writ of habeas

corpus be denied.

4

5

       Dated:  August 28, 2008

                           Respectfully submitted,

6

7

                           EDMUND G. BROWN JR.
                           Attorney General of the State of California

8

                           DANE R. GILLETTE
                           Chief Assistant Attorney General

9

                           GERALD A. ENGLER
                           Senior Assistant Attorney General

10

                           PEGGY S. RUFFRA
                           Supervising Deputy Attorney General

11

12

                           /s/ Joan Killeen

13

                           JOAN KILLEEN
                           Deputy Attorney General

14

                           Attorneys for Respondent

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Mem. Of P.'s & A.'s In Supp. Of Ans. To Pet. For Writ Of Hab. Corpus - *Tamboura v. Ayers, Warden* - C 08-1143 JF(PR)

25

1

# TABLE OF CONTENTS

2

|  | **Page** |
|---|---|
| 3 STATEMENT OF THE CASE | 2 |
| 4 STATEMENT OF FACTS | 2 |
| 5        1. Prosecution's Case | 5 |
| 6        2. Defense Case | 7 |
| 7 STANDARD FOR GRANTING RELIEF | 9 |
| 8 ARGUMENT | 9 |
| 9   I. THE STATE COURT REASONABLY REJECTED PETITIONER'S CLAIM THAT INSUFFICIENT EVIDENCE SUPPORTED THE FINDING THAT HE VIOLATED PROBATION BY WILLFULLY FAILING TO PAY CHILD SUPPORT | 9 |
| 12     A. State Court Of Appeal Decision | 9 |
| 13     B. The State Court's Rejection Of Petitioner's Claim Was Reasonable | 11 |
| 14   II. THE STATE COURT REASONABLY REJECTED PETITIONER'S CLAIM THAT INSUFFICIENT EVIDENCE SUPPORTED THE FINDING THAT HE WILLFULLY VIOLATED THE STAY-AWAY ORDER | 13 |
| 16     A. State Court Of Appeal Decision | 13 |
| 17     B. The State Court's Rejection Of Petitioner's Claim Was Reasonable | 15 |
| 18   III. THE STATE COURT REASONABLY REJECTED PETITIONER'S CLAIMS THAT THE TRIAL JUDGE PREDETERMINED HIS SENTENCE AND WAS BIASED AGAINST HIM | 16 |
| 21     A. State Court Of Appeal Decision | 16 |
| 22     B. The State Court's Rejection Of Petitioner's Claim Was Reasonable | 20 |
| 23   IV. THE STATE COURT REASONABLY REJECTED PETITIONER'S CLAIM THAT HE WAS NOT GIVEN NOTICE OF THE PROBATION VIOLATIONS | 23 |
| 25     A. State Court Of Appeal Decision | 23 |
| 26     B. The State Court's Rejection Of Petitioner's Claim Was Reasonable | 24 |
| 27 CONCLUSION | 25 |

28

Mem. Of P.'s & A.'s In Supp. Of Ans. To Pet. For Writ Of Hab. Corpus - *Tamboura v. Ayers, Warden* - C 08-1143 JF(PR)

i

1

# TABLE OF AUTHORITIES

2

**Page**

3

**Cases**

4

*Bonin v. Calderon*
59 F.3d 815 (9th Cir. 1995)                                                21

5

*Bowen v. Roe*
6  188 F.3d 1157 (9th Cir. 1999)                                             2

7  *Brecht v. Abrahamson*
507 U.S. 619 (1993)                                                        9

8

*Davis v. Woodford*
9  384 F.3d 628 (9th Cir. 2004)                                              21

10  *Fry v. Pliler*
___ U.S. ___
11  127 S.Ct. 2321 (2007)                                                    9

12  *Jackson v. Virginia*
443 U.S. 307 (1979)                                                        11

13

*Juan H. v. Allen*
14  408 F.3d 1262 (9th Cir. 2005)                                            11

15  *LaMere v. Slaughter*
458 F.3d 878 (9th Cir. 2006)                                               11

16

*Miller-El v. Cockrell*
17  537 U.S. 322 (2003)                                                      9

18  *Payne v. Borg*
982 F2d 335 (9th Cir. 1992)                                                11

19

*People v. Guerra*
20  37 Cal.4th 1067 (2006)                                                  21

21  *People v. Rodriguez*
51 Cal.3d 437 (1990)                                                       12

22

*Rich v. Calderon*
23  187 F.3d 1064 (9th Cir. 1999)                                           21

24  *United States v. Francischine*
512 F.2d 827 (9th Cir. 1975)                                               12

25

*United States v. Guadarrama*
26  742 F.2d 487 (9th Cir. 1984)                                            12

27  *Williams v. Taylor*
529 U.S. 362 (2000)                                                       9, 11

28

Mem. Of P.'s & A.'s In Supp. Of Ans. To Pet. For Writ Of Hab. Corpus - *Tamboura v. Ayers, Warden* - C 08-1143
JF(PR)

ii

**TABLE OF AUTHORITIES  (continued)**

Page

*Woodford v. Visciotti*
537 U.S. 19 (2002)                                                                                    9

**Statutes**

28 United States Code
          § 2244(d)(1)                                                                          2
          § 2254(d)(1)                                                                          9
          § 2254(d)(2)                                                                          9

Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA)                 9

California Code of Civil Procedure
          § 170.1(c)                                                                          21

California Penal Code
          § 136.1(a)(2)                                                                       2
          §§ 187/664                                                                          2
          §§ 236/237                                                                          2
          § 245(a)(2)                                                                         2
          § 273.5(a)                                                                          2
          § 422                                                                               2
          § 12022.5(a)                                                                        2

Mem. Of P.'s & A.'s In Supp. Of Ans. To Pet. For Writ Of Hab. Corpus - *Tamboura v. Ayers, Warden* - C 08-1143 JF(PR)

iii

1 | EDMUND G. BROWN JR.
Attorney General of the State of California
2 | DANE R. GILLETTE
Chief Assistant Attorney General
3 | GERALD A. ENGLER
Senior Assistant Attorney General
4 | PEGGY S. RUFFRA
Supervising Deputy Attorney General
5 | JOAN KILLEEN
Deputy Attorney General
6 | State Bar No. 111679
  455 Golden Gate Avenue, Suite 11000
7 | San Francisco, CA 94102-3664
  Telephone: (415) 703-5968
8 | Fax: (415) 703-1234
  Email: Joan.Killeen@doj.ca.gov
9 | Attorneys for Respondent

10 | IN THE UNITED STATES DISTRICT COURT

11 | FOR THE NORTHERN DISTRICT OF CALIFORNIA

12 | SAN JOSE DIVISION

13

14 | **ALY TAMBOURA,**                                    C 08-1143 JF (PR)

15 |                                     Petitioner,

16 |              **v.**

17 | **ROBERT L. AYERS, Warden,**

18 |                                     Respondent.

19

20 | **INDEX OF STATE COURT RECORDS IN SUPPORT OF ANSWER TO PETITION FOR WRIT OF HABEAS CORPUS**

21

22

23

24

25

26

27

28

1 | EDMUND G. BROWN JR.
Attorney General of the State of California
2 | DANE R. GILLETTE
Chief Assistant Attorney General
3 | GERALD A. ENGLER
Senior Assistant Attorney General
4 | PEGGY S. RUFFRA
Supervising Deputy Attorney General
5 | JOAN KILLEEN
Deputy Attorney General
6 | State Bar No. 111679
  455 Golden Gate Avenue, Suite 11000
7 | San Francisco, CA 94102-3664
  Telephone: (415) 703-5968
8 | Fax: (415) 703-1234
  Email: Joan.Killeen@doj.ca.gov
9 | Attorneys for Respondent

10 | IN THE UNITED STATES DISTRICT COURT

11 | FOR THE NORTHERN DISTRICT OF CALIFORNIA

12 | SAN JOSE DIVISION

13

14 | ALY TAMBOURA,                           C 08-1143 JF (PR)

15 |                          Petitioner,    **INDEX OF STATE COURT
                                            RECORDS IN SUPPORT OF
                                            ANSWER TO PETITION FOR
16 |        v.                              WRIT OF HABEAS CORPUS**

    ROBERT L. AYERS, Warden,

17 |                         Respondent.

18

19 |                              INDEX

20 |        EXHIBIT A    Clerk's Transcript on Appeal, H027846, Part 1,
                        pp. 1-120
21

22 |        EXHIBIT A    Clerk's Transcript on Appeal, H027846, Part 2,
                        pp. 121-249

23 |        EXHIBIT A    Clerk's Transcript on Appeal, H029922, Part 3

24 |        EXHIBIT B    Reporter's Transcript on Appeal, H027846, Part
                        1, pp. 1-50
25

26 |        EXHIBIT B    Reporter's Transcript on Appeal, H029922, Part
                        2, pp. 1-4

27 |        EXHIBIT B    Reporter's Transcript on Appeal, H029922, Part
                        3, pp. 1-134
28

Index Of State Court Records Lodged In Support Of Answer To Petition For Writ Of Habeas Corpus - C 08-1143 JF
(PR)

1

1    EXHIBIT B    Reporter's Transcript on Appeal, H029922, Part 4, pp. 135-268

2

3    EXHIBIT B    Reporter's Transcript on Appeal, H029922, Part 5, pp. 301-321

4    EXHIBIT C    Appellant's Opening Brief, H029922

5    EXHIBIT D    Respondent's Brief, H029922

6    EXHIBIT E    Appellant's Reply Brief, H029922

7    EXHIBIT F    California Court of Appeal Opinion, H029922

8    EXHIBIT G    Petition for Review, H029922

9    EXHIBIT H    California Supreme Court Order Denying Review, S154941

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Index Of State Court Records Lodged In Support Of Answer To Petition For Writ Of Habeas Corpus - C 08-1143 JF (PR)

## DECLARATION OF SERVICE

Case Name: **Tamboura v. Ayers, Warden**                     No.: **C 08-1143 JF (pr)**

I declare:

I am employed in the Office of the Attorney General, which is the office of a member of the Bar of this Court at which member's direction this service is made. I am 18 years of age or older and not a party to the within entitled cause; I am familiar with the business practice at the Office of the Attorney General for collection and processing of correspondence for mailing with the United States Postal Service. In accordance with that practice, correspondence placed in the internal mail collection system at the Office of the Attorney General is deposited with the United States Postal Service that same day in the ordinary course of business.

On **August 29, 2008**, I placed the attached **1) ANSWER TO PETITION FOR WRIT OF HABEAS CORPUS; 2) MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF ANSWER TO PETITION FOR WRIT OF HABEAS CORPUS; AND 3) INDEX OF STATE COURT RECORDS IN SUPPORT OF ANSWER TO PETITION FOR WRIT OF HABEAS CORPUS** in the internal mail collection system at the Office of the Attorney General, 455 Golden Gate Avenue, Suite 11000, San Francisco, CA 94102, for deposit in the United States Postal Service that same day in the ordinary course of business, in a sealed envelope, postage thereon fully prepaid, addressed as follows:

Aly Tamboura
F-17843
San Quentin State Prison
P. O. Box 4999
San Quentin, CA 94974

I declare under penalty of perjury under the laws of the State of California the foregoing is true and correct and that this declaration was executed on **August 29, 2008**, at San Francisco, California.

| L. SORENSEN | /s/ L. Sorensen |
|---|---|
| Typed Name | Signature |