**E-Filed 8/24/2011**

# UNITED STATES DISTRICT COURT

## FOR THE NORTHERN DISTRICT OF CALIFORNIA

### SAN JOSE DIVISION

| | |
|---|---|
| Aly TAMBOURA, | Case Number 5-8-cv-1143-JF |
| Petitioner, | NONCAPITAL PRISONER PETITION |
| v. | ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS |
| Michael MARTEL, Acting Warden of San Quentin State Prison, | |
| Respondent. | [Doc. No. 246] |

Petitioner, a state prisoner, contends that his constitutional rights were violated when the state trial court revoked his probation. For the reasons set forth below, the petition will be denied.

I

The Monterey Superior Court sentenced Petitioner to fourteen years in state prison for inflicting corporal injury on a spouse and making terrorist threats, both with personal use of a firearm. The trial court then stayed the sentence and placed Petitioner on probation for three years. The same court subsequently held an evidentiary hearing, found that Petitioner had violated probation, and imposed the stayed fourteen-year sentence.

The California Court of Appeal affirmed in a reasoned decision, and the California Supreme Court denied a petition for review. Petitioner then initiated the present federal action.

II

Petitioner alleges four claims:  (1) there was insufficient evidence to support the finding that he violated the terms of his probation by willfully failing to pay child support, in violation of his right to due process; (2) there was insufficient evidence to support the finding that he violated the terms of his probation by willfully failing to stay more than one hundred yards away from his victim, in violation of his right to due process; (3) his probation violation hearing was not held before a neutral arbiter, in violation of his right to due process; and (4) Petitioner did not receive notice of a violation of probation, in violation of his right to due process.

A

In Claims 1 and 2, Petitioner argues that there was insufficient evidence to support the findings that he *willfully* violated the terms of his probation.  In connection with Claim 2, Petitioner acknowledges that he was within one hundred yards of his victim's house when he dropped off their son, Aly, one night after going out to dinner.  However, Petitioner argues that there is no evidence that he knew at the time that he was within one hundred yards of the house. He claims that his daughter chose the drop-off point because she was concerned about Aly walking home in the dark.

There was, in fact, ample evidence to support a finding that Petitioner knew where his victim's house was.  His children so testified.  The state courts found that Petitioner's explanation as to why he dropped Aly off where he did was not credible:  this finding was based on the underlying facts of Petitioner's conviction, his intelligence and resourcefulness, his lack of self-control and his attitude in his domestic-violence program and toward court orders, as well as the fact that the specific location where he dropped Aly off simply did not make sense if Petitioner's actual concern was to prevent Aly from walking in the dark and there were other people who could have driven Aly home.  Moreover, even though Petitioner was aware that his victim was angry that, just a few days earlier, he had dropped off Aly within one hundred yards of the house, Petitioner unnecessarily chose to do so again, thereby terrifying his victim.  The state courts therefore reasonably concluded that Petitioner knew where his victim lived, and that his decision to go to a location within one hundred yards of his victim's house accordingly was

2

1    willful.

2         In resolving Claim 2, this Court concludes that there was sufficient evidence to support a

3    finding that Petitioner willfully violated the terms of his probation.  Accordingly, Claim 1, which

4    involves another finding of willfully violating probation, is moot and need not be addressed.

5                                                    B

6         When a court holds an evidentiary hearing to determine whether a probationer has

7    violated probation, that court must be neutral and detached, and it must not prejudge the

8    evidence.  *See Gagnon v. Scarpelli*, 411 U.S. 778, 786 (1973).  In Claim 3, Petitioner contends

9    that the trial judge who revoked his probation was not impartial.

10        Petitioner points to a number of sharply worded statements by the trial judge to support

11   this claim, such as "when you have a 14-year prison sentence suspended, that means, if you

12   violate probation in any way, that you will go to state prison for the 14 years," "Either there is a

13   violation or there isn't.  If there is, he's going to prison for 14 years," and "if you violate

14   probation, you are going to prison and you will not be released. . . .  It will be merciless."

15        Petitioner has cherry-picked statements to support his claim.  The trial court held a

16   thorough evidentiary hearing on the alleged probation violations; the hearing covered 268 pages

17   of reporter's transcript.  The court heard testimony from six witnesses and entered eighteen

18   exhibits into evidence.  Petitioner testified at length, and he submitted mitigating evidence

19   without limitation.  The trial judge appropriately weighed all of the evidence in reaching the

20   conclusion that Petitioner willfully violated the terms of his probation and should serve the

21   stayed sentence of fourteen years in prison.  In doing so, the state trial court was both firm and

22   impartial.

23                                                    C

24        A probationer is entitled to written notice of claimed violations before probation may be

25   revoked.  *See Gagnon*, 411 U.S. at 786.  The notice provided to Petitioner alleged that he

26   disturbed the peace of his victim and that he failed to pay child support; it did not include an

27   allegation that Petitioner had a second-party contact with his victim when their daughter

28   telephoned the victim one time.  In Claim 4, Petitioner contends that this was a violation of

                                                    3

1  which he did not receive notice.  However, the state court did not find this phone call to be a

2  violation; rather, it simply was evidence that was introduced in connection with the violation

3  regarding Petitioner's willful failure to stay more than one hundred yards from his victim's

4  house.  There was no claimed violation of which Petitioner did not receive notice.

5                                                III

6          Good cause therefor appearing, the Court will deny the petition for a writ of habeas

7  corpus.  The Court also will decline to issue a certificate of appealability, as it cannot be said that

8  "reasonable jurists would find the district court's assessment of the constitutional claims

9  debatable or wrong."  *Slack v. McDaniel*, 529 U.S. 413, 484 (2000).  The Clerk shall enter

10 judgment in favor of Respondent and shall close the file.

11         IT IS SO ORDERED.

12

13 DATED:  8/24/2011

14                                                _____
                                                 JEREMY FOGEL
                                                 United States District Judge

15

16

17

18

19

20

21

22

23

24

25

26

27

28

4

Case No. 5-8-cv-1143-JF
ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS
(DPSAGOK)